## MATHILDE LA GOURGUE v. PATRICK SUMMERS.

Where the proceeds of property sold under a special mortgage are more than enough to satisfy the mortgage under which the sale was made, and there are subsequent general mortgages existing against it, the surplus of the price should be applied by the sheriff to the satisfaction, *pro tanto*, of the subsequent general mortgages according to their dates, unless ascertained to have been previously satisfied, before giving the release which the purchaser has a right to demand. In such a case, the sheriff has a right to require the payment of the whole price ; nor would the levying of an execution upon such surplus by any other creditor of the mortgagor, secure any privilege to the seizing creditor.

The receipt of a twelve-months' bond by a seizing creditor does not operate a satisfaction of the judgment. If the bond be unpaid, the creditor has his recourse against the debtor.

A judicial mortgagee, in whose favor a twelve-months' bond has been taken for the price of property sold under an execution against his debtor, must show, that the bond or property seized proved insufficient to satisfy his claim, to entitle himself to a preference over subsequent judicial mortgagees, in the distribution of the proceeds of other property subject to the general mortgages existing against the debtor. C. P. 715.

APPEAL from the Parish Court of New Orleans, *Maurian, J.*

La Gourgue v. Summers.

*Bartlette*, for the appellant.

*Denis*, contra.

SIMON, J.   The plaintiff is appellant from a judgment discharging a rule which he had obtained on the sheriff of the parish of Orleans, to show cause why he should not pay over to him the money in his hands, seized under the writ of *fieri facias* issued in this cause, as appears by his return thereon ; and further praying that Dawson & Co., and G. T. Laguerenne, two of the defendant's judgment creditors, might be notified of the rule.

The plaintiff obtained judgment against the defendant Summers, on the 17th November, 1840, for the sum of $525, with interest and costs, which judgment appears to have been duly recorded in the office of the recorder of mortgages ; and an execution having been issued thereon, the same was levied on the 21st of October, 1843, by the sheriff of the parish of Orleans, on *the surplus in his own hands of the proceeds of the sale of the property seized and sold at the suit of Lucien Soulié v. Patrick Summers, after satisfying the judgment of the seizing creditor*, said surplus amounting to $304, which the sheriff keeps subject to the order of the Parish Court.

It further appears, that the property, the surplus of the proceeds of the sale of which was seized as above stated, was seized and sold by the said sheriff, to satisfy a debt secured by special mortgage granted on the same by Summers in favor of Lucien Soulié, long previous to the recording of the plaintiff's judgment ; and that the property mortgaged was sold for $2725, of which, after satisfying the claim of the seizing creditor, there remained a balance in the sheriff's hands, amounting to the sum of $304.

The record shows, that Dawson & Co., the recording of whose judgment is anterior to plaintiff's, having issued execution thereon, in January, 1841, caused it to be levied on a piece of real property belonging to the debtor, which was shortly afterwards sold by the sheriff at twelve months credit, for a sum much larger than necessary to satisfy the execution.   A bond was furnished in their favor by the purchaser for the amount of the debt, interest and costs, with good and sufficient surety, and special

mortgage reserved on the property sold, which bond fell due on the 6th of April, 1842.

The record shows also, that Laguerenne, whose judgment was recorded previous to the plaintiff's, issued an execution thereon, in December, 1840, which was returned by the sheriff in March following, in these words: "Costs satisfied, and judgment settled between the parties."

It further appears by a certificate of mortgage produced on the trial, and dated the 17th of October, 1843, that the property seized and sold in the suit of *Soulié* v. *Summers*, was, at the date thereof, subject to several mortgages, to wit: 1st. To the special mortgage of Soulié. 2d. To the judicial mortgage of Dawson & Co. 3d. To the judicial mortgage of Laguerenne; and 4th, to that of the plaintiff; and also to four other posterior judicial mortgages. But by another certificate of mortgage, also produced on the trial of this cause, and dated the 10th of April, 1844, it is declared by the recorder of mortgages, that "*there is no mortgage standing in the name of Patrick Summers, and recorded against a certain lot of ground, &c.*," the description of which is exactly the same as that of the property sold at the suit of Soulié, and the balance of the proceeds of the sale of which is now in controversy.

With these facts before us, it is contended by the appellees, that the funds in the hands of the sheriff ought to be applied to the satisfaction, *pro tanto*, of their judgments, the recording of which is anterior to that of the plaintiff's; that the funds represent Summers's property, on which their mortgage stood; and must be distributed according to law, and not be paid over to the fourth mortgagee, whilst the second and third are not satisfied.

On the other hand, the appellant insists, that he is entitled to the benefit of his seizure, and that the sheriff is bound to pay over to him the amount upon which his execution was levied.

By art. 707 of the Code of Practice, if the seizing creditor has a special mortgage on the property seized, which is preferable or anterior to other mortgages existing on the property, the sheriff can only require the purchaser to pay the price, to the amount of the seizing creditor's mortgage, and the purchaser *keeps the surplus*

of said price, to be by him applied to paying the inferior or sub-
sequent special mortgages existing on the property. This arti-
cle only applies to special mortgages, the owners of which can
subsequently call upon the purchaser for the payment of the bal-
ance, or surplus remaining in his hands, according to their rank.

Art. 710, of the same Code, provides for the cases in which
there exists a general mortgage on the property sold, resulting
either from a legal or *judicial mortgage*, and says, that the pur-
chaser *cannot retain any part of the price* for the purpose of
paying it, or refuse paying the same, unless he is in danger, by
a suit already commenced against him, of being evicted, or un-
less he has just reason to fear that a suit will be instituted; in
which case he may retain *the price, unless the* suing creditor
shall relieve him from the disturbance, or give him proper secu-
rity against it. From the words of this article, *it is obvious,* that
its provisions apply more particularly to judicial mortgages ante-
rior in date to *that of the suing* creditor; for, as to those poste-
rior in date, there would be no need of providing against any
danger of eviction or disturbance from their existence, as they
could never be an impediment to the suing creditor's applying
the proceeds of the sale of the property, first to the satisfaction of
his mortgage claim; and the subsequent mortgagees could never
complain of the sale, or disturb the purchaser. Be this as it
may, it is clear from this article, that the purchaser cannot retain
any part of the price except in certain cases when the property
sold is subject to special mortgages, other than the seizing credi-
tor's; and that the amount of the price must be paid to the sher-
iff, without any regard to the general mortgages. Thus, the
sheriff has a right to require payment of the whole price, unless
there be special mortgages; and the question presents itself,
what must he do with the balance, after satisfaction of the debt
due to the seizing creditor? This question was answered by
us in the case of *Powell* v. *Kellar,* (5 Robinson, 272,) in which,
under what we considered to be a correct application of art. 708
of the Code of Practice, we came to the conclusion, that the safest
course to be pursued was, to discharge the subsequent general
mortgages to the extent of the funds in the hands of the sheriff,
in order to give to the purchaser a clear and unencumbered title.

Indeed, it cannot be pretended that the debtor is entitled to receive such surplus, and to keep it for his own use, to the prejudice of his other mortgage creditors, who, perhaps, would find no other property on which their executions could be levied, and who would have no recourse against the property sold to satisfy a debt secured by an anterior mortgage. So we held again in the case of *Fortier* v. *Slidell et al.*, (7 Robinson, 398,) although the features of that case, and the proceedings resorted to, were somewhat different from those of the case first above referred to. The question was not free from difficulties, and we must confess, that in approving and even adopting the course pointed out in the cases above mentioned, in the absence of any legal provision, we yielded to the suggestions of a strong sense of equity ; for, it is obvious that, as under art. 708, if their remains nothing more due on the price, after paying the suing creditor, the sheriff is authorized to give to the purchaser *a release of all the inferior or subsequent mortgages,* justice and equity require that when there is a balance in his hands proceeding from the sale, such balance should be applied by the sheriff to the satisfaction, *pro tanto,* of the said subsequent mortgages according to their dates, unless ascertained to have been previously satisfied, before giving the release which the purchaser has a right to demand ; nay, such release cannot be given, unless it is ascertained that nothing is to be applied to the extinguishment of those subsequent or inferior mortgages.

With this view of the rights resulting in favor of creditors from the inferior general mortgages, on the proceeds of the sale of property seized and sold by virtue of a superior one, either general or special, and of the manner in which the balance of the funds is to be disposed of by the sheriff, according to the course pursued and recognized in the case of *Fortier* v. *Slidell et al.,* above referred to, it follows necessarily, that the levying of an execution upon the said balance by any other creditor of the defendant, does not confer any right or privilege on said funds in favor of the seizing creditor, so long as his proceedings are in conflict with the vested rights of other creditors, who, under their general mortgage, may be entitled to a preference over him ; and that, in this case, the appellees, Dawson & Co.,

whose claim amounts to upwards of $3000, would be first enti-
tled to recover the balance in controversy; and, in case of their
having been previously satisfied, that said balance would go to
Laguerenne's judgment.

But the record informs us, that Dawson & Co., long before
this, issued their execution against Summers, by virtue of which
they have caused other property to be seized to satisfy their judg-
ment, and that a bond was taken in their favor by the sheriff,
on the 6th of April, 1841, to an amount sufficient to cover the
whole debt.  The return of the sheriff on Laguerenne's exe-
cution, shows also that he has nothing to claim, as his judgment
was settled between the parties, and the costs satisfied.

With regard to Laguerenne, it is clear, that he cannot set up
any claim to the funds in dispute, and, therefore, his pretensions
must be disregarded.

As to Dawson & Co., the evidence does not show what became
of the twelve-months' bond which fell due in April, 1842, or of
the property for the price of which said bond was given.  We
are aware, that a twelve-months' bond received by a seizing credi-
tor, does not operate a satisfaction of the judgment, and that, if
the bond be unpaid, the creditor still has his recourse against his
debtor; (7 Mart. N. S. 221, and 9 La. 92;) but, for aught we
know, the bond may have been paid at the time, or after it be-
came due; or, if not paid, the property may perhaps be sufficient
to satisfy the whole debt due under the bond.  In either case, it
would be unjust to deprive the appellant of the right by him ac-
quired under his execution, and under his general mortgage,
which is the third in rank; and we think that as, under the cir-
cumstances, Dawson & Co. before enforcing their right upon the
funds in dispute, ought to show that they have vainly sought to
obtain the satisfaction of their judgment, either in whole or in
part, from the bond taken in their favor, or from the property
which they are bound to discuss, (Code of Pract. p. 715,) jus-
tice requires, that this case should be remanded for the purpose of
ascertaining the real state of the facts on this subject; for, if it
be shown that they have been, or can be paid integrally, the
plaintiff and appellant will then be entitled to recover the whole
of the said funds, or perhaps a part thereof in proportion to the

balance which may remain due to Dawson & Co., after discussion of the said bond and property.

It is, therefore, ordered, that the judgment of the Parish Court be annulled, and that this case be remanded to the lower court for further proceedings, with instructions to the judge, *a quo*, to inquire into the facts relative to the satisfaction of the judgment of Dawson & Co., out of the twelve-months' bond by them taken, and of the property which they are bound to discuss; to disregard the claim set up by Laguerenne; and to adjust the rights of the other parties to the funds in controversy, according to the principles recognized in this opinion ; the appellees, Dawson & Co., and Laguerenne, paying the costs of this appeal.