### THOMAS POWELL v. JOHN KELLAR.

Where a Sheriff, by whom property has been sold under a first mortgage, pays over the surplus of the proceeds, remaining after its satisfaction, in discharge of subsequent general mortgages, binding on the defendant, he will not be liable to the latter, the act causing him no damage.

APPEAL from the Commercial Court of New Orleans, *Watts*, J. *Hoffman*, for the appellant.

*Benjamin*, contra.

MORPHY, J. Two lots of ground belonging to the defendant, were seized and sold in execution, on the 16th of August, 1841, to satisfy a judgment declaring a privilege thereon for $13,910 99. The Canal and Banking Company, to whom this judgment had been assigned by Powell, purchased the property for $17,200, at the Sheriff's sale. After the adjudication, J. S. Conklin, the attorney on record of the defendant, called upon the Deputy Sheriff to know, what disposition was to be made of the balance of the price obtained for the property, after satisfying the writ placed in his hands. The officer showed him the certificate of the mortgages on the lots, and told him that he intended to pay the two mortgages next recorded, and he applied such balance accordingly. The two next judicial mortgages thus paid were held, one by the Canal and Banking Company, for $635 36, and the other by Andrew Hodge, for $1615 41. The purchaser sued out a monition, to which the defendant filed an opposition, in September, 1841, which he afterwards withdrew. On the 21st of January, 1843, the defendant, appearing by other counsel, took a rule on the Sheriff to show cause why the latter should not pay over to him the sum of $2250, the balance of the price remaining after satisfying the judgment under which the property had been sold. This rule having been discharged by the inferior Judge, the defendant appealed.

It is not pretended, that the judgments paid by the Sheriff had been previously satisfied, or were not binding on the defendant and his property ; but it is urged, that under the law, that officer was bound to pay over this money to the defendant in execution ; that as the judgment creditors had made no seizure in his hands, the mere recording of their judgments did not authorize the Sheriff to apply the funds as he did ; that in sales under execution, the purchaser is authorized to retain only the amount of the special mortgages on the property, anterior or preferable to that of the seizing creditor, or to apply the surplus of the price only to the special mortgages existing on the property, subsequent to that of the suing creditor ; but that as relates to general mortgages, whether legal or judicial, the purchaser cannot refuse to pay the price, or retain any part thereof, to pay the mortgages, unless there has been a suit commenced against him, under such general mortgages, or he has just reason to fear that such a step will be taken ; and we are referred to articles 704, 678, 679, 682, 685, 706, 707, and 710 of the Code of Practice. These several articles seem to rest upon the ground, that as a general mortgage affects all the property of the debtor, and the person who holds such a lien, can enforce it, whenever he pleases, on any part of the same, the suing creditor should not be delayed in the collection of his debt, by the existence of such a mortgage upon the particular piece of property he has levied upon ; hence, it is provided, that property sold under execution, must be sold subject to the general mortgages upon it, and that the purchaser must pay the price to the suing creditor, except in the cases provided for in article 710 : but it is by no means so very clear, as the appellant's counsel would have it, that when property is sold under a first mortgage, as in the present case, and is affected by subsequent general mortgages, the surplus of the proceeds remaining after paying the first mortgage, is to be paid to the defendant in the execution. Article 708 of the Code of Practice provides, that " the purchaser is bound for nothing beyond the price of his adjudication, and if, after paying the suing creditor, as directed in the preceding article, there remains nothing more due, to discharge mortgages subsequent to that of the suing creditor, the Sheriff shall give him a release from these mortgages." From this provision, it may well

be inferred, that if there remains a surplus to discharge subsequent mortgages, the Sheriff shall grant no release, at least to the extent of such surplus. The question then, is, what is to be done with this excess? We understand that in this parish, the Sheriffs have uniformly understood this article as authorizing them to discharge the subsequent mortgages, to the extent of the funds in their hands, in order to give to the purchasers a clear and unincumbered title. Although the latter cannot withhold from a suing creditor the payment of the price, by reason of general mortgages on the property, (except in certain cases,) it does not necessarily follow, that in a case like the present, he should be bound to pay the surplus of the price to the defendant in execution, against whom the law gives him a recourse, in case he is evicted the day after he has paid. Code of Practice, art. 713. Should he not be permitted, to avoid the necessity and danger of such a recourse, not to retain, but to pay this money to the judgment creditor or creditors, whose mortgages stand recorded, immediately after that of the suing creditor? In the present case, the Canal and Banking Company, who have done so, through the Sheriff, might be considered as subrogated to the rights of such creditors, under article 2157 of the Civil Code, which declares, that "subrogation takes place, of right, for the benefit of a purchaser of any immoveable property, who employs the price of his purchase in paying the creditors, to whom the hereditament was mortgaged." But admitting, that in strictness of law, the Sheriff was without authority to make these payments, he can be answerable to the appellant, only for the injury he has done him by his error, or illegal act. If the judgments, which have been satisfied out of this money, were binding, and could have been enforced against him; (which is admitted,) the act of the Sheriff, although irregular, has caused him no real injury. It is, as to him, *damnum absque injuria.* Equity forbids, that he should recover of the Sheriff, who has released the mortgages, money which has been applied to the payment of his just debts, and thus enrich himself at the expense of that officer. Thus, he who has paid, through mistake, the debt of another, believing himself indebted, has a claim against the true debtor, if, in consequence of the payment, the creditor has destroyed, or parted with his title. Civil Code, art..

2288.   In relation to one of the two mortgages, that of $635 36, its amount never was in fact received by the Sheriff, because the Canal Bank, which held it, having purchased the property, the surplus of price they had to pay was reduced by compensation, to the extent of the second mortgage claim they had against the defendant in execution.   In conclusion, we must remark, that the evidence renders it extremely probable, that the appellant knew that the Sheriff intended to apply this balance as he did.   J. S. Conklin, his counsel on record, was informed of such intention, which, it is fair to presume, he communicated to his client.   No objection was then made to this disposition of the money, and seventeen months after, it has been accordingly paid, and has availed the defendant.   An attempt is made to recover it from the Sheriff, which cannot succeed, as the act of that officer, admitting it to be unauthorized by law, has caused no injury to the plaintiff in the rule.

*Judgment affirmed.*