## CHIGE *v.* LANDREAUX.

After an adjudication at a probate sale made to effect a partition among heirs, it was discovered that the property sold was encumbered by a special mortgage in favor of a bank; and a part of the price was deposited by the purchaser in the hands of a third person, to be paid to the heirs upon their exhibiting proof of the erasure of the mortgage. On the production of a declaration, made by the administrator of the succession before a notary in the form of an authentic act, that he released the mortgage in favor of the bank, the recorder of mortgages cancelled the mortgage, and the heirs were thereby enabled to withdraw the amount on deposit. The bank having enforced its mortgage, the purchaser sued the heirs for its amount; and having made, on execution, but a part, proceeded against the recorder. *Held,* that the latter was responsible to the purchaser for the balance not recovered from the heirs.

By a special provision in the stat. of 7 April, 1824, sec. 31, incorporating the bank of Louisiana, the right of the bank as a mortgagee to seize and sell the mortgaged property, is, in cases of mortgages executed under that act, unaffected by the death of the mortgagor.

APPEAL from the Fifth District Court of New Orleans, *Buchanan,* J. *Soulé,* for the plaintiff. *Legardeur,* for the appellant, cited 20 Duranton, Nos. 193, 194. *Went v. Morgan,* 3 La. 311. *Sacerdotte* v. *Duralde,* 1 La. 484, *Williamson* v. *Creditors,* 5 Mart. 620. The judgment of the court was pronounced by

SLIDELL, J. The plaintiff purchased certain real estate in New Orleans, at a probate sale, ordered for the purpose of effecting a partition among the heirs of *Pigneguy.* Upon preparation of the act of sale, it was found that the property was encumbered with a special mortgage in favor of the Bank of Louisiana, executed in their life time by the deceased persons in the matter of whose successions the sale was made. The plaintiff accordingly refused to pay the purchase money absolutely; but caused a sufficient amount of it to be retained and deposited in bank, to protect him against the mortgage. The money was to remain in deposit till the bank should be satisfied, and to be delivered to the heirs of *Pigneguy,* only upon their exhibiting proof that the mortgage had been raised. This mortgage the recorder of mortgages cancelled, upon no other authority than that of a declaration, made before a notary in the form of an authentic act, by *Marsoudet,* the administrator of the succession, that, by virtue of his authority as administrator, he released and cancelled the mortgage in favor of the bank. The heirs were thus enabled to withdraw the money deposited, without the plaintiff's knowledge or consent. Subsequently the bank seized the property to satisfy its mortgage; the plaintiff gave the recorder of mortgages notice of these proceedings; and, after an unsuccessful resistance, was compelled to pay the bank. The plaintiff then sued the heirs of *Pigneguy,* but obtained in execution of his judgment a partial satisfaction only, and now claims the residue of what he has thus lost from the defendant, *Landreaux.*

It is urged, on the part of the defendant, that there was no breach of his official duty. That he cancelled the mortgage upon the production at his office of a duly certified copy of a notarial act, which he had no right, or at least was not bound, to pronounce null and of no effect. Upon this point the defendant cites the authority of Duranton, Droit Français, vol. 20, p. 303. It appears that in France, an instruction "de la regie" had been given, in conformity with the opinion of "le grand juge, ministre de la justice," that the recorders of mortgages were not to occupy themselves with questions of law, which may arise as to the radiation of mortgages; and that their responsibility should not be compromited by radiations assented to by authentic act, or in virtue of a judgment certified to them. Without investigating the applicability of the doctrine of Duranton to our system, or whether it correctly explains the jurisprudence of France, it suffices to say that it applies only, even according to that author, to the case of an assent by the mortgagee himself, exhibited by an authentic act; in which case it would seem, according to that author, not to be the duty of the recorder to inquire into the capacity of the mortgagee. In the present case, the authentic act, upon which the recorder has cancelled the mortgage, emanates not from the mortgagee, but from the representative of the succession of the mortgagor. The proposition is monstrous that the mere exhibition of an authentic act, not executed by the mortgagee or some one authorized to represent him, should authorize the recorder to extinguish the mortgagee's rights.

This brings us to the second proposition of the defendant, that the administrator of the succession, by virtue of his office, has authority to cancel mortgages created by the deceased. If the proposition, in its general sense, be conceded, still the case of the bank's mortgage falls under special legislation. By the 31st section of the charter of the Bank of Louisiana it was declared that, "on all mortgages executed under this act, the president, directors, and company of the bank shall have the right to seize the property mortgaged, in whatever hands it may be, in the same manner, and with the same facilities, that it could be seized in the hands of the mortgagor, notwithstanding any sale or change of the title or possession thereof, by *descent or otherwise.*" By the 35th section of the charter, the bank, as mortgagee, was exempted from the effects of surrender by insolvent mortgagors, it being declared that, in such cases, the mortgaged property should not pass. This legislation was intended to favor the bank, and to protect its securities from being dilapidated, like those held by individuals, by the notoriously wasteful and extravagant administration of syndics and administrators, and the unreasonable charges which, under pretence of priviliges, were levied at the expense of mortgage creditors. Whether the interest of the State in this institution, or a disposition to encourage banking operations, was the motive of the legislator, it is unnecessary to inquire; the legislative will is clearly expressed, and, under it, the administrator was incapable of cancelling the mortgage *virtute officii.* That incapacity resulted from a statute which the recorder was bound to know and notice.

The exemption in question has been the subject of judicial interpretation, and has been recognized in the case of *Williams* v. *Bank of Louisiana,* 17 La. 382, and in the case of *Bertoli* v. *The Citizens' Bank,* 1 Annual R. p. 119. It is also adverted to in the case of the *Gas Bank* v. *Webb, ante* p. 526. It is not pretended that the bank was in any wise a party to the proceedings in the Court of Probates, or ever, directly or indirectly, assented to what the administrator has done. It was an entire stranger to all these matters.

The unauthorized radiation and certificate granted by the defendant, has enabled the administrator and heirs to abstract the fund deposited; and his good faith, which is unquestioned, cannot protect him.

The argument that an administrator has a right to control and receive the funds of a succession, seems to us irrelevant. The funds deposited did not belong to the succession absolutely. It belonged to both parties, under the terms of the contract; to the plaintiff, for the purpose of his protection against the bank's mortgage; to the heirs, when that mortgage should be released. The condition was that the money was to remain in deposit, and to be delivered to the heirs of *Pigneguy*, only upon their exhibiting proof that the mortgage had been raised. That proof the defendant unlawfully furnished, and the immediate loss must fall upon him, leaving him his recourse upon those whose misconduct has led him into error, and the heirs who have been benefited by the unlawful receipt of the fund.                    *Judgment affirmed.*