(67 South. 468)

No. 20024.

ROBINSON & CO. v. COSNER (LEWIS, Warrantor).

(June 8, 1914. On Rehearing, Jan. 25, 1915.)

*(Syllabus by the Court.)*

1. TAXATION �找725—SALE — REDEMPTION— WHAT CONSTITUTES—MORTGAGES.

An instrument purporting to be a sale of property from a tax purchaser to the owner, but made within the delay allowed for redemption, and for a price about equal to the amount paid by such purchaser, plus the interest and penalties allowed by law, is a redemption which leaves the mortgages resting upon the property unaffected.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1445–1447; Dec. Dig. ⟍725.]

2. BANKRUPTCY ⟍196—PETITION AND DISCHARGE—EFFECT ON JUDICIAL MORTGAGE.

A judicial mortgage, inscribed more than four months prior to the filing of a petition in bankruptcy against the mortgage debtor, is unaffected by such petition or by the subsequent discharge of the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 306–316; Dec. Dig. ⟍196.]

3. JUDGMENT ⟍784—JUDICIAL MORTGAGE— PRIORITY OF LIENS.

A judicial mortgage is unaffected by a claim of privilege for the price of improvements placed upon real estate, where the claim is unrecorded, the judgment for the price fails to specify the particular property upon which such privilege bears, and is recorded in the conveyance, and not in the mortgage, book, and the entire property is appraised and sold in globo.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1353–1357; Dec. Dig. ⟍784.]

4. EXECUTION ⟍272—EXEMPTIONS — CLAIM AT SALE—SUFFICIENCY.

A verbal statement on behalf of the owner, made at sheriff's sale of his property, that he will insist upon his homestead rights, is without effect when followed by inaction for several years and until, after the distribution by the sheriff of the proceeds, a controversy arises among creditors as to the legality of such distribution, and the owner intervenes merely to favor one creditor to the prejudice of another.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 771, 781–788; Dec. Dig. ⟍272.]

5. HOMESTEAD ⟍169—EXEMPTION—WAIVER —SUFFICIENCY.

A verbal waiver of homestead, made on behalf of the husband alone, at the time of the public sale of the property, is ineffectual.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 335; Dec. Dig. ⟍169.]

6. EXECUTION ⟍322 — ADJUDICATEE — PROCEEDS OF SALE—APPLICATION.

Where the seizing creditor becomes the adjudicatee of property sold in satisfaction of a senior mortgage and vendor's lien, he is entitled to retain from the price an amount sufficient to pay his claim, together with the costs of the proceeding, and, if there be any surplus, he is required to apply the same to the payment of the special junior mortgages, if any there be; but, if the junior mortgages are general, he should pay the surplus to the sheriff, to be applied by him to their payment, or, as it has been held, he may deposit it in court, and call the mortgagees in to litigate their respective rights.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 949–955; Dec. Dig. ⟍322.]

7. MORTGAGES ⟍590—FORECLOSURE—SALE— CANCELLATION OF MORTGAGES.

The sheriff is authorized to cancel mortgages on property sold by him only when the price realized is insufficient to do more than satisfy the senior mortgage under which the sale is made and to pay the costs of the suit; and there is no law which authorizes him, or any one, to cancel, without notice to the mortgagee, a general mortgage, so long as there exists a fund which is applicable, or may be applied, though in controversy as to its payment.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1691, 1692; Dec. Dig. ⟍590.]

8. MORTGAGES ⟍568—FORECLOSURE—SALE— PROCEEDS — RIGHTS OF JUDICIAL MORTGAGEES—REMEDIES.

Where, as the result of a sale, in satisfaction of a senior mortgage or privilege, there is a surplus of price, attributable to the payment of junior general mortgages, the holders of such mortgages may assert their rights either by way of third opposition at the time, or, subsequently, by way of the hypothecary action.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1639–1646; Dec. Dig. ⟍568.]

O'Niell and Provosty, JJ., dissenting.

Appeal from Fifteenth Judicial District Court, Parish of Jefferson Davis; A. M. Barbe, Judge.

Hypothecary action by Robinson & Co. against George W. Cosner, with John H. Lewis as warrantor. From judgment for plaintiffs, defendant and his warrantor appeal. Affirmed on rehearing.

Cline, Cline & Bell, of Lake Charles, for appellant Cosner. McCoy, Moss & Knox, of Lake Charles, for appellant Lewis. J. Sheldon Toomer, of Lake Charles, for appellees.

PROVOSTY, J. This is an hypothecary action by Robinson & Co. against Geo. W. Cosner to enforce a judgment obtained by Robinson & Co. against one Neely, and duly recorded while the property now sought to be proceeded against stood of record in Neely's name.

Neely failing to pay the credit part of the price of the sale by which he had acquired this property, his vendor, John H. Lewis, obtained a judgment against him, and caused a fi. fa. to issue on it, and the property to be seized and sold, and purchased it at the sheriff's sale. He subsequently sold it to Cosner, who has called him in warranty to defend the suit.

Included in this judgment for the vendor's claim was a debt which, for want of registry, was not secured by any mortgage or privilege as to third persons, and the fi. fa. was issued for both debts, and the sale was made for both. Lewis' bid was the only one made at the sale, and was for the full amount called for by the writ; that is to say, for the full amount of the two debts, plus the costs. The sheriff's deed to Lewis recited that the price of the adjudication was paid by Lewis; but the sheriff's return on the writ shows the contrary, since it contains the statement that the money was received from Lewis and paid to his attorney. As a matter of fact, no part of the price of the adjudication was paid, except to an amount sufficient for the costs. The sheriff's deed to Lewis which was duly recorded, directed the clerk of court and ex officio recorder of mortgages to cancel all mortgages subsequent in date of registry to Lewis' said vendor's claim; and, under this instrument, the registry of Robinson & Co.'s said judgment was canceled. And it was after this cancellation that the defendant, Cosner, bought the property from Lewis. He did so in good faith, relying upon the records of the recorder's office, which showed said property to be free of mortgages.

The property was Neely's homestead, and he was present at the sale for the purpose of asserting his homestead right of $2,000 against any excess of the price of the adjudication over and above the amount of Lewis' judgment. He could not claim the homestead as against Lewis' judgment, because one of the debts for which it had been rendered was for the purchase price of the property, and the other was for labor and materials that had gone towards improving the homestead. Const. art. 245. This other debt, not having ever been recorded, did not bear mortgage or privilege upon the property as against third persons, and, while priming the homestead, was itself primed by Robinson & Co.'s judicial mortgage. Robinson & Co., though present at the sale through an agent for the purpose of asserting any rights they might have, made no attempt to interfere. Doubtless, they considered that, inasmuch as their claim was inferior in rank to the vendor and homestead claims, which together exceeded the amount of the adjudication, they could get nothing by interfering. That this was the reason for their nonaction is not shown affirmatively, but results by a very strong implication. It was only some nine months later that they awoke to their present idea of their having rights in the premises, and brought this suit. The date of the sale was August 5, 1911. This suit was filed June 10, 1912.

The question is, of course, whether at said sheriff's sale the property passed to Lewis free of their said judicial mortgage, or burdened with it. If it passed free, the sheriff was authorized to direct the inscription of said mortgage to be canceled. If it passed burdened with said mortgage, the cancellation of the inscription of said mortgage was

unauthorized, and cannot affect Robinson & Co.'s mortgage rights.

The rule is that the property sold at a sheriff's sale passes burdened with the mortgages resting upon it, which are superior in rank to the claim of the seizing creditor, but free of those which are inferior (C. P. arts. 679, 683–685, 708, 710), unless the inferior mortgages are special, and a balance remains after the seizing creditor's claim is satisfied; in which event the purchaser retains in his hands this balance to an amount equal to that of these inferior special mortgages (Tessier v. Bourgeois, 38 La. Ann. 256). But he cannot retain this balance when the inferior mortgages are not special, but are general— i. e., legal or judicial. Pasley v. McConnell, 38 La. Ann. 474. In Fortier v. Slidell, 7 Rob. 398, this court said that the Code had made no provision for the mode of raising subsequent general mortgages when at a sheriff's sale there remains a surplus, and propounded the question, "What is to be done in such a case?" and answered the question by saying that this surplus must be paid to the sheriff, to be attributed by him to satisfying these subsequent general mortgages. This view was expressly reaffirmed in La Gourgue v. Summers, 8 Rob. 175, and has never been departed from.

All this we do not understand the learned counsel for Robinson & Co. as contesting in any way; in fact, they have cited the said articles of the Code and decisions as authority on their side. Their contention is that, unless the sheriff does apply the surplus to the subsequent mortgages, they are not extinguished, but continue to remain upon the property, and that in the instant case he did not do so, but applied it in part to the satisfaction of the second item of Lewis' judgment, which was inferior in rank to Robinson & Co.'s mortgage.

We do not think that the manner in which the sheriff has distributed the price of a sale made by him can exercise any influence upon the question of whether the property passed to the purchaser burdened with, or free of, the mortgages subsequent in rank to the claim of the seizing creditor, unless, indeed, the subsequent mortgages are special, and the surplus of the price of adjudication has been paid to the holder of them; in which case, of course, these special mortgages would be extinguished by payment, and could no longer affect the property. The purchaser at a sheriff's sale is not required to supervise the distribution of the proceeds of the sale. All he is required to do is to comply with his bid. The law then regulates the situation; and, according to this law, the property passes to him free of the general mortgages inferior in rank to the claim of the seizing creditor.

Indeed, if the sale in this case had been made to satisfy only that part of Lewis' judgment which was for the vendor's claim, and Lewis had paid the price of the adjudication, the case would appear to us to be wholly free from difficulty. But the sale was made to satisfy both the vendor's claim and the unsecured claim included in the judgment. The judgment was for both claims, and the fi. fa. was for both, and the sale was, in form and in fact, made to satisfy both, and Lewis paid no part of the price; he and the sheriff merely went through the paper ceremony of exchanging receipts.

Under these circumstances, doubt has arisen in our minds whether, to the extent that the sale was thus made to satisfy the unsecured claim, it must not be considered as having been for a debt inferior in rank to Robinson & Co.'s said mortgage, with the result that the property passed subject to said mortgage.

We have concluded, however, that while the sale was, in fact, made to satisfy both claims, it was, in legal contemplation, made to satisfy only the vendor's claim. Our rea-

son for so concluding is that, in law, a sheriff's sale must have the effect of either removing subsequent general mortgages from the property sold, or letting them remain thereon; that its having the effect of both removing such mortgages and letting them remain is a legal impossibility; that therefore this sale must be considered as having been made, in legal intendment, to satisfy one or the other of said two claims, and not both; and that, in this condition of things, it must be considered as having, in legal intendment, been made to satisfy the paramount claim included in the writ. We have concluded that the legal situation in the case of such a dual writ is not different from the situation where, instead of the two claims being included in one writ, they are embraced in separate writs, and the two writs are placed in the hands of the sheriff at the same time, and the sale is made to satisfy both. In such a case the paramount writ alone is considered; an adjudication must be made regardless altogether of whether the amount bid is sufficient or not to leave a balance for the subordinate writ. C. P. art. 685. We do not think that the fact that the two claims were included in one judgment and in one writ, instead of being kept separate, has altered the legal situation. They have continued to be entirely separate in legal intendment.

If, in the case of such a dual writ, the sale had to be considered as being made to satisfy the unsecured claim, there could be no adjudication whenever the amount of the subsequent mortgages and the secured claim together exceeded the value of the property. This is so because the bidders at the sale would understand that the property was to pass to them burdened with these subsequent mortgages, and would regulate the amount of their bids accordingly, and would make no bid if the secured claim and the subsequent mortgages together exceeded the value of the property. In the instant case, if the announcement had been made at the sale that the property was to pass burdened with this Robinson & Co. mortgage, there could not have been any sale, as the amount of this mortgage and of the vendor's claim together largely exceeded the value of the property, judging of this value from the bidding at said sale.

Again, in the case of such a dual writ, the property would unquestionably pass free of the homestead claim; for the sale would have been made to satisfy the vendor's claim. Now, if, while it thus passed free of the homestead right, it passed subject to subsequent general mortgages, the legal situation would be that these subsequent general mortgages would, as an effect of the sale, be endowed with a preference over the homestead in every case where the price of the adjudication did not exceed the amount of the vendor's claim by an amount sufficient to satisfy both it and the homestead. The property would then pass free of the homestead, but subject to subsequent general mortgages.

Robinson & Co.'s mortgage is for a much larger amount than is being claimed in this suit. In other words, Robinson & Co. are not seeking to enforce their mortgage for its full amount, but only to the extent of the surplus of the price of the adjudication over the vendor's claim. Now, if said sale had been made to satisfy this unsecured claim, the legal situation would have been that the property would have passed burdened with Robinson & Co.'s mortgage to its full amount. By claiming only the surplus, therefore, Robinson & Co. have practically recognized that the legal situation stands just as if the sale had been made to satisfy the vendor's claim alone. The only ground upon which they base their contention that their mortgage continued to adhere to the property is that the surplus was legally at-

tributable to it, and was erroneously attributed to Lewis' unsecured claim.

As the price of the sale was divisible, although the sale itself was indivisible, one might, at first blush, think that the sale might be considered as having been made in satisfaction of the vendor's claim up to its amount, and in satisfaction of the unsecured claim for the balance; but, on principle, as we have endeavored to show, this cannot be done; and a departure from principle is always fraught with pernicious consequences. Erroneous doctrine comes with smiling face and in pleasant garb .when presenting itself for adoption, but thereafter makes no end of trouble.

As already stated, we are clear that the property at a sheriff's sale passes free of subsequent general mortgages, and that the purchaser has no concern with the disposition which the sheriff may make of the proceeds of the sale. But what if the price of the adjudication is not paid, but, as happened in this case, is retained by the purchaser? In such a case, we have little doubt that, to the extent that the price of adjudication thus retained would, if paid, have been attributable to the subsequent general mortgages, the property passes subject to these mortgages. The ceremony of an exchange of receipts between the purchaser and the sheriff could not in such a case alter the legal situation, which would stand just as if the purchaser had retained the surplus of the price for the express purpose of satisfying these subsequent general mortgages. Whenever the price had been thus expressly retained, no one, we imagine, would say that the property had passed free of these mortgages. Therefore, if Lewis were still the owner of this property, and the suit were against him, we should have little doubt of Robinson & Co.'s right to the hypothecary recourse they are now seeking to. exercise. But Lewis is no longer owner; Cosner is;

the suit is not against Lewis; it is against Cosner, who, as already stated, acquired the property in good faith, believing it to be free of mortgages—a brief founded upon the public records.

In saying founded on the public records, we do not lose sight of the fact that the sheriff's return, which the law required should be on file in the office of the clerk of court and ex officio recorder, showed that the price had not been paid, but had been retained by Lewis; but we do not consider that this sheriff's return forms any part of the public records in connection with the question of whether at the sheriff's sale the property passed free of, or burdened with, the general mortgages inferior in rank to the seizing creditor's claim. Articles 693 and 698, C. P., provide in that connection as follows:

Article 693:

"This act must make mention:
"1. Of the writ by virtue of which the object has been seized and sold.
"2. Of the title of the cause in which the writ has been issued.
"3. Of the names and surnames of the defendant, plaintiff and purchaser.
"4. Of the nature of the object sold, with a description of it, as well as of the price and conditions on which it has been adjudged.
"5. Of the manner in which the purchaser has paid the price, or bound himself to discharge it.
"6. Of the amount of the privileges or mortgages with which the property adjudicated is incumbered, and which were made known at the time of the adjudication.
"7. And finally, of the special mortgage which he has given to secure the payment of this price, where the sale has been made on a credit."

Article 698:

"This act, thus recorded and delivered to the purchaser, shall be held as full proof of what it contains, in all the courts of this state, in the same manner as an act before a notary would be."

We think that when Cosner came to examine the records with a view to determining whether this property had passed at said sale free of, or burdened with, this judicial

mortgage, he had a right to rely upon this sheriff's deed, and was not required to consult the sheriff's return. This deed informed him that said property had been sold to satisfy a debt superior in rank to said judicial mortgage, and that the price of the adjudication had been paid. With the verity of the sheriff's statement contained in the deed, that the price had been paid, Cosner had no concern. His sole concern had to be as to whether, assuming the price to have been paid, the sheriff was authorized by law to cause the inscription of subsequent mortgages to be canceled; and the sheriff had such authority if the sale was made to satisfy a claim superior in rank to this judicial mortgage.

Cosner and Lewis make the point that this surplus now sued for would not have been attributable to Robinson & Co.'s mortgage if paid, but to the satisfaction of Neely's homestead claim, which had a preference over it; and that therefore Robinson & Co. are without any right of action. Into this and other questions raised in the case and argued in the briefs we have deemed it unnecessary to go.

The judgment appealed from is therefore set aside, and the suit of plaintiffs is dismissed at their cost in both courts.

## On Rehearing.

MONROE, C. J. On January 12, 1911, plaintiffs obtained a judgment against W. A. Neely, which was recorded in the mortgage book of the parish of Calcasieu on January 26, 1911, and took effect, as a judicial mortgage, upon a half section of land then owned and occupied by the judgment debtor, and there is still due upon that judgment a balance exceeding the amount here involved. On May 12, 1911, John H. Lewis obtained judgment, by confession, against the same defendant, which was recorded in the conveyance book of the parish on January 5, 1912, for amounts aggregating $4,623.19, of which $3,713.60 ($2,213.60 plus $1,500) was represented by notes, secured by mortgage and vendor's lien priming any claim for homestead that the defendant might have asserted, and also priming the judicial mortgage acquired by the plaintiffs herein. The remaining $909.59 was represented by notes which had been given by Neely to Layne & Bowler in payment for a pump and machinery which he had purchased for the irrigation of his land. His claim (merged in his judgment) with respect to those notes was recorded after the registry of the judgment obtained by plaintiffs, and was then recorded in the conveyance, and not in the mortgage, book; and, while the judgment recognizes Lewis' mortgage and vendor's lien upon the land to which we have referred, it contains no specification of the particular property to which the privilege for the price of the pump and machinery is supposed to have attached. Upon the judgment so obtained Lewis issued execution, under which, on August 5, 1911, the land in question was adjudicated to him, as the sole bidder, for $5,900, being the amount of the judgment, including principal, interest, and costs, and the writ was returned satisfied. He paid the costs, amounting to $118.54, and retained in his hands the balance of $5,781.46. Thereafter, on December 22, 1911, he sold the land to the defendant, Cosner, and, on January 5, 1912, the deputy clerk, at the request of the counsel representing Mr. Cosner, and (to quote language of the counsel) "upon exhibiting the record in the suit of Lewis v. Neely, * * *" canceled the judicial mortgage recorded in favor of the plaintiffs. On June 12th following plaintiffs brought this hypothecary action praying that Cosner be cited and condemned to relinquish the land so acquired by him, in order that it may be sold by the sheriff for the payment of the debt due to them, to the extent of $957.04,

with legal interest thereon from August 5, 1911, or, in default of so doing, that he be condemned to pay plaintiffs that amount, which represents the difference between the $5,900, at which the property was adjudicated to Lewis, and the amount required to satisfy so much of Lewis' claim and judgment as primed plaintiffs' judicial mortgage. Cosner excepted, answered, and called Lewis in warranty; and Lewis excepted, and answered, in effect, as follows: That plaintiffs' petition discloses no cause or right of action; that the proceeds of the sheriff's sale, save so much as was expended in payment of costs, were properly retained by him, for the reason that the debts for the payment of which the sale was made primed that due to plaintiffs, the two first mentioned representing the purchase price of the property, and the third having been incurred by the defendant, Neely, for money, labor, and material purchased for the repair and improvement of his place, and being, therefore, payable from any amount to which Neely would be entitled by right of his homestead claim, and hence entitled to precedence over the claim of the plaintiffs; and that, moreover, Mr. and Mrs. Neely have waived their homestead rights in favor of appearer and have authorized him to assert them in their behalf; that appearer conveyed to the defendant, not only the title acquired at the sheriff's sale, but also a valid tax title acquired by him from C. Brent Richard; and that plaintiffs' claim against Neely had been discharged by reason of Neely's discharge in bankruptcy. To the claim thus predicated upon the tax title plaintiff filed a plea of estoppel.

On May 8, 1911, after Lewis had answered, Neely filed an opposition, in the suit which Lewis had brought against him, in which he had confessed judgment, and in which the property in controversy had been sold, and he therein sets up a claim to $1,500 of the proceeds of the sale, or "so much thereof as may remain in the sheriff's hands after payment of all claims against which appearer cannot assert his homestead right." This opposition appears to have been signed and sworn to by Neely, in person, in the state of Arizona, on March 25, 1913, and was filed in the district court on May 8th following. On the other hand, we find in the record an ex parte affidavit executed by Mrs. Neely, at Lake Charles, La., on March 19, 1913, and admitted in evidence over the objection of plaintiffs' counsel, in which she declares that the judgment under which the property in question was sold took precedence of her homestead rights (though she asserted, and now asserts, those rights as against other creditors and debts), and that she and her husband, at the time of the sheriff's sale, waived and abandoned any and all right to claim a homestead as against the debts included in said judgment—

"and do hereby waive and transfer to said John H. Lewis all of their homestead rights in the premises or the proceeds thereof, to the extent that same may be necessary to satisfy said judgment, authorizing said John H. Lewis to appear in any legal proceeding and assert said homestead rights, either in the name of appearer or in his own name."

She further declares that the item of $909.59 included in the judgment obtained by Lewis represents "machinery, materials, and goods furnished by Layne & Bowler Company to improve the property here in question," and that the indebtedness therefor "was secured by a lien and privilege upon the pumping plant and one acre thereof," and that, taking $8,850 as the value of the entire property, the pumping plant and one acre were worth $3,000.

Mr. Goudeau, a member of the bar (called by either defendant or warrantor) testified that Mr. Neely requested him to appear at the sheriff's sale and announce that he (Neely) was urging his homestead claim, and that witness complied with his request.

"My understanding," continues the witness, "was that he had made an agreement with Mr. Lewis, and my recollection is that he told me that he wanted to make this claim for the homestead, and, if Mr. Lewis complied with his price or agreement with him, it would not be necessary to urge the homestead claim, but that he wanted to do that in order to protect himself —to make sure that the agreement would be carried out—whatever the agreement was. And after the sale he seemed to have been satisfied, and said that it was not necessary to take any further steps. He was satisfied. Evidently, Mr. Lewis did what he promised."

Judge Barry, who at that time appears to have represented Lewis, and who was called as a witness on his behalf, testified that Neely had spoken to him about claiming homestead rights, and that, the suggestion having been made that he get another attorney, he employed Mr. Goudeau, who notified the sheriff:

"That, in case there should be more than a sufficient amount to pay the privileged debts, he [Neely] should demand his homestead rights. * * *

"Q. Do you recall whether Mr. Goudeau said that he was claiming the homestead against privileged claims, * * * or claiming the homestead, except as against J. H. Lewis' claims? A. I don't know that he specified Prof. Lewis. He said, if anything above the vendor's lien privilege and such as ranked the homestead, why he expected them (?) to claim them. Now, the sheriff didn't know but what there would be lively bidding on that property, I think, from the way he talked."

It is admitted that plaintiffs have recovered two sums of $269.35 and $499.47, respectively, which are to be credited on their judgment, but it is shown that they were no parties to the cancellation of the judicial mortgage whereby the balance due was secured. The original of the sheriff's deed to Lewis is not copied in the transcript, but we find an abstract thereof, from which we take the following excerpt, which we assume to be part of the "record" which was exhibited by the counsel, to wit:

"The said John H. Lewis, purchasing the above-mentioned property under a judgment rendered on a vendor's lien, purchases same subject to the special mortgage of Charles F. Spaulding for $1,500, and the special mortgage of

Chas. Ranson A. Nockton for $2,213.60, and all subsequent mortgages against this property are hereby authorized to be canceled by process of law."

It is shown that Lewis sold the property to Neely, on February 27, 1909; that on June 25, 1910, it was sold by the tax collector to C. B. Richard for taxes of 1909, assessed to Lewis; that on May 11, 1911, Lewis obtained the confession of judgment from Neely upon a petition in which he alleges Neely's ownership of the property and his own mortgage and privilege thereon; that he obtained recognition of the mortgage and privilege in the judgment, and thereunder caused the property to be sold, on August 5, 1911, as the property of Neely, and took title from, and appropriated the proceeds of, the sale; that on August 18th following he took a quitclaim deed from Richard; and that on December 22, 1911, he made the sale to Cosner.

It is shown also that plaintiffs were recognized upon Neely's schedule in bankruptcy as secured creditors for the debt here asserted, that Neely was discharged March 19, 1913.

[1-3] Our reconsideration of the case has led to no change of view in regard to the tax title, the bankruptcy proceedings, the status of Lewis' claim for the $909.50, or the homestead claim.

If plaintiff had proceeded by third opposition to claim the surplus here involved, Lewis, who had just caused the property to be sold as belonging to Neely, had accepted title as coming from Neely, and was retaining the proceeds of the sale as in payment of a debt due by Neely to him, could hardly have been heard to say that the property thus sold belonged to Richard, and that the surplus of the proceeds over and above the amount required to pay his mortgage debt could not be attributed to the payment of another of Neely's mortgage creditors, and it may well be doubted whether he can be

heard to say so for the purposes of the defense that he now sets up. Be that as it may, the tax deed to Richard bears date July 6, 1910, was recorded September 13, 1910, and reads, in part, as follows:

" * * * To hold the same to the said, C. B. Richard, legal heirs and assigns forever, with the understanding and express stipulation that the owner of the property described herein shall have the right to redeem the same at any time for the space of one year, beginning on the day when the said deed is filed for record in the conveyance office in the parish in which the property is situated, and is [should be 'if'] not redeemed, such record in the conveyance or mortgage office shall operate as a cancellation of all conventional and judicial mortgages."

This instrument, relied on as evidencing a sale, bears date August 18, 1911, and contains the recital that it was executed in consideration of the payment to Richard of $100, which about covered the amount that he had paid at the tax sale, with the interest and penalty added, and was about one-sixtieth of the amount for which the property had been adjudicated to Lewis on August 5th. Moreover, Richard did not own the property, but held merely an inceptive, or inchoate, title, and, as Lewis was then the owner, the transaction amounted merely to a redemption, which left the mortgages unaffected.

We have been unable to find in the transcript the exact date of the filing of the petition in bankruptcy, but, from the data at hand, we conclude that it was more than four months after the recording of plaintiff's judgment, and Neely's discharge did not, therefore, affect the mortgage thus acquired. 4 Cyc. 403.

[4, 5] The claim upon the Layne & Bowler notes, if properly recognized in the judgment and recorded, would have borne a privilege, which could be successfully asserted against a third person, upon the pump and machinery and one acre of the land upon which they were situated; but the judgment contains no specification of the property to be affected, and was not recorded until after the registry of plaintiffs' judgment. C. C. art. 3249; People's I. R. M. Co. v. Benoit, 117 La. 999, 42 South. 480; Const. art. 186; Bank v. Maples, 119 La. 47, 43 South. 905; Allen-Wadley Lumber Co. v. Huddleston, 123 La. 522, 49 South. 160. Again, conceding that under article 246 of the Constitution the parties who furnished the pump and machinery were otherwise entitled to a privilege to the extent above stated, and that Lewis was subrogated to their rights, the privilege was lost by reason of his failure to have the property to which it was subject separately appraised and sold. C. C. 3228, 3268; Hoy v. Peterman, 28 La. Ann. 290; Scannell & Lafaye v. Beauvais, 38 La. Ann. 217; Payne & Joubert v. Buford et al., 106 La. 83, 30 South. 263. And, further, it seems to be asserted, upon the one hand, that the claim upon the notes in question is good as against the homestead claim, and, upon the other hand, that it became good against plaintiffs by reason of the fact that Neely, upon the occasion of the sale, waived his homestead right in favor of Lewis, or, rather, that he asserted that right as against all other claims save those held by Lewis. But the evidence does not sustain the view last stated. The witnesses called by defendant or warrantor testified, as we understand them, that Neely had his homestead right verbally asserted, as a matter of protection against Lewis, as well as any one else, and more particularly, to secure the carrying out of some agreement between him and Lewis, which was thought by one of the witnesses to have been carried out, but of which we have no definite information. Such an assertion, followed by inaction, can hardly be considered effective; and, though it may be made at any time before, it comes too late after, the distribution of the proceeds has been made. Johnson v. Agurs, 116 La. 634, 40 South. 923, 114 Am. St. Rep. 562; Abbott v. Heald, 128 La. 719, 55 South. 28. The homestead could not have

been waived in the manner stated at any time or in favor of any person.

Lewis having long since, with the acquiescence of Mr. and Mrs. Neely, but with no such waiver as would have bound them, become the beneficiary of the distribution of proceeds, which took place shortly after the sale here in question, they would have no standing to reclaim anything from him, and it is now, as we think, too late for them to interfere merely to prevent the plaintiffs herein from recovering that which they may have the right to recover, though the Neelys may not.

[6-8] The remaining point presents the question, as we now see it, whether, under our law, a man can be deprived of his property, through no fault of his own, without his consent, and by means of a proceeding in court to which he was not made party. Plaintiffs were the owners of a claim secured by a valid general mortgage, which was primed by the homestead right and possible claim of their debtor, and by two out of three claims held by another creditor. The homestead right was not asserted in a manner entitling it to recognition, and the other creditor, proceeding upon all of his claims, caused the property to be sold, and it realized a price sufficient to pay the two claims which primed plaintiffs' and to furnish a surplus which was legally attributable to the payment, in part, of plaintiffs' claim, as the next in rank. But the seizing creditor retained the entire proceeds, appropriated the surplus to the payment of his own inferior claim, and, having been the adjudicatee of the property, sold it to a third person, who thereafter obtained the cancellation of plaintiffs' mortgage upon an ex parte application to the recorder.

The Code of Practice is clear to the effect that, where property burdened with special junior mortgages is sold in satisfaction of the senior mortgage, the purchaser not only may, but shall, retain in his hands, and apply to the payment of such junior mortgages; the surplus over and above so much of the price as may be required to pay the senior mortgage. If he pays such surplus to the sheriff, he does so at his own risk, for the sheriff has no authority to receive it, and his sureties are not liable for it if he does so. The language used in article 707 is:

" * * * And the purchaser shall apply the surplus of the price, if there be any, to paying the special mortgages existing on the property, subsequent to that of the suing creditor."

If the suing creditor, being the holder of the senior mortgage, happens to become the adjudicatee of the property, he, of course (i. e., where there are special junior mortgages) retains the amount required to pay his own debt and applies the surplus beyond that amount to the special junior mortgages, but there is no warrant for the idea that, with such surplus in his hands, he can cancel the special junior mortgages, with or without notice to the holders, until he has paid them, so far as the surplus will go.

If, however, there is no surplus of price beyond the amount required to satisfy the senior mortgage, in foreclosure of which the suit is brought, the suing creditor, being the adjudicatee, pays the costs and retains the balance of the price, thereby, in effect, taking the property in payment of his debt, and the sheriff is authorized to give him a release from the junior mortgages, whether special or general. C. P. art. 708. Where the property is burdened with mortgages and privileges which have a preference over the judgment of the seizing creditor, there can be no adjudication unless the amount bid is sufficient to discharge them. C. P. 684. If, in such case, the amount bid is sufficient to pay the mortgages and privileges having precedence of the judgment of the seizing creditor, the property may be sold, and the purchaser may retain in his hands so much of the price as is required to pay the "special

mortgages and privileges." C. P. arts. 679, 683, 706, 718.

There is therefore abundant provision for the protection of special mortgages and privileges and for the disposition of the funds attributable to their payment, but there is little mention, in that connection, of general mortgages. Article 710 of the Code of Practice, which seems to contemplate the sale of property subject to general mortgages, and the eviction of the purchaser, and which nevertheless provides that the purchaser must pay the price to the seizing creditor, unless an action for eviction is brought against him or he has just cause to fear will be brought, can have no application in a case in which property is sold in satisfaction of a senior mortgage or privilege, and was probably intended as a means of keeping, to some extent, in the market, real estate burdened with general and tacit mortgages in favor of married women and general mortgages in favor of minors, many of which were uncertain in amount and difficult or impossible to remove. We are not, however, concerned with that article at this time, since it has no special application to this case, and has been thus referred to, in connection with the subject under consideration, for the purpose of showing that it, in a manner, negatives the idea that one can be deprived of his security without his knowledge, or save upon payment of his debt; in saying which it will be understood that, when one accepts as his security a mortgage upon property so burdened for an amount far in excess of its value, he does so with the knowledge that the holders of the prior mortgages are to be paid first, and that they have the right to provoke the sale of the property and appropriate the entire proceeds, if needed for that purpose, to the payment of their mortgages. He has, however, the right to rely upon it that, if, when the sale is made, the property realizes a price more than sufficient to satisfy all the prior mortgages, the surplus will come to him, and that he will not be deprived of his security until he gets it, or until the law takes possession of it for his benefit. The question of the precise disposition that should be made at the moment of the sale of the surplus to which we have thus referred, when attributable to the payment of general mortgages, has received serious consideration from this court, on several occasions, as may be seen from the following résumé of some of the adjudged cases, to wit:

In Powell v. Kellar, 5 Rob. 272, it appeared that certain property had been sold under execution to satisfy a privileged claim, and that it realized $2,250 more than was required to pay the same, which surplus, having been paid into the hands of the sheriff, was used by him in satisfying two judicial mortgages which stood next in rank to the privilege of the seizing creditor, whereupon the defendant, owner of the property, ruled the sheriff to show cause why he should not pay the $2,250 over again to him, and, the rule having been discharged, the plaintiff appealed.

This court, though holding to the view that the purchaser cannot withhold from a seizing creditor the payment of the price by reason of general mortgages, also held that it did not follow that the surplus, in a case such as that before it, was to be paid to the defendant in execution, and the judgment discharging the rule against the sheriff was affirmed, though it seemed to have been admitted, or partially admitted, that, "in strictness of law," he had no authority to make the payments complained of. In the course of the opinion, it was said:

"Article 708 of the Code of Practice provides that: 'The purchaser is bound for nothing beyond the price of his adjudication, and if, after paying the suing creditor, as directed in the preceding article, there remains nothing more due, to discharge mortgages subsequent to that of the suing creditor, the sheriff shall give him a release from these mortgages.' From this provi-

sion, it may well be inferred that, if there remains a surplus to discharge subsequent mortgages, the sheriff shall grant no release, at least to the extent of such surplus. The question, then, is: What is to be done with the excess? We understand that in this parish [Orleans] the sheriffs have uniformly understood this article as authorizing them to discharge the subsequent mortgages, to the extent of the funds in their hands, in order to give to the purchasers a clear and unincumbered title."

Article 679 is very explicit to the effect that the purchasers shall pay into "his" (the sheriff's) hands the surplus of the price in excess of the amount required to satisfy the privileges and special mortgages; nor do we understand the court to hold differently in the case cited; the question there presented having been, not as to the authority of the sheriff to receive the surplus, but whether he should have used it, as he did, in paying general mortgages, or should have turned it over to the judgment debtor, and the court holding that, though "in strictness of law" he may not have been authorized so to do, yet that, having used the surplus in paying the general mortgages, to the benefit of the debtor, he (the debtor) was not entitled, in equity, to recover it.

In Fortier v. Slidell and others, 7 Rob. 398, it appeared that the plaintiff purchased, at sheriff's sale, for $3,600, on credit, one-sixth interest in a plantation and slaves, the property of James Peuch, which was affected by a special mortgage to the Union Bank and two general mortgages, the one to Slidell, and the other to the Peuch minors; that, being thereafter threatened with eviction by the mortgagees last mentioned, he refused to use the proceeds left in his hands in paying the special mortgage; that the bank, as holder, obtained judgment thereon and seized the interest in question under execution, and that it was again adjudicated to plaintiff for $6,000; that, after paying the claim of the bank, there remained $2,142.65 in the hands of the purchaser, who then brought the suit, alleging that the amount was insufficient to pay either of the general mortgages, and praying that he be allowed to deposit the same, and that they be called in to litigate their rights with respect to it. In the course of its opinion the court said:

"What was the plaintiff to do with the balance of $2,142.65 remaining in his hands of the price of the adjudication, after paying the debt of the * * * bank? The purchaser is bound for nothing beyond the price of his adjudication, says article 708 of the Code of Practice. Had that price been inadequate to discharge the claim of the bank, or barely sufficient to pay it, there could have been no difficulty, for the article just quoted provides that, in such a case, the sheriff shall give the purchaser a release from the mortgages subsequent or inferior to that of the suing creditor; *but the Code nowhere provides for the mode of raising such incumbrances, where there remains a surplus after paying the suing creditor who had a special mortgage preferable or anterior to them.* [Italics by present writer.] Article 707 of the Code of Practice provides that, if after paying the suing creditor, there be a surplus, the purchaser shall apply it to the payment of the special mortgages existing on the property, subsequent to that of the suing creditor. In the present case there exists no special mortgage subsequent to that of the bank, but there are two general mortgages, both subsequent or inferior to it. To whom, then, was this surplus to be paid, in order to exonerate the purchaser, and to clear the property from its incumbrances? It can hardly be pretended that in such a case the money should be paid to the debtor, leaving the purchaser exposed to be evicted by the subsequent mortgage creditors of that very debtor, who would thus have been permitted to pocket the money arising from the sale of their pledge. It is not, on the other hand, the province of the purchaser, nor can he safely take upon himself to decide to which of two general mortgages the balance in his hand is to be applied. The purchaser, being bound for nothing beyond the price of his adjudication, has surely, on paying that price, the right of having the property cleared of all incumbrances subsequent to that of the suing creditor. The course pursued by the plaintiff to assert and enforce this right presents, in our opinion, a safe and proper rule of proceeding for a case like the present. It arises ex necessitate rei, and we cannot see any good reason why, in the absence of any law to the contrary, it should not be adopted and sanctioned by us."

And there was judgment accordingly.

In La Gourgue v. Summers, 8 Rob. 175, it appeared that, under a judgment obtained upon a debt secured by special mortgage, the property of Summers had been seized and

sold, and that, after paying the suing creditor, there remained a surplus in the hands of the sheriff, which was seized by La Gourgue, under an ordinary judgment which he had obtained against Summers, and which had been recorded and operated as a general mortgage on the property which had been sold. It further appeared that La Gourgue ruled the sheriff to show cause why he should not pay over to him (La Gourgue) the money thus seized. Other holders of general mortgages appear to have intervened in the matter, and the court concluded to remand the case for further inquiry in regard to the status of one of the claims so asserted. In dealing with the legal question presented, however, the court, after some reference to C. P. art. 710, said:

"From the words of this article it is obvious that its provisions apply more particularly to judicial mortgages anterior in date to that of the suing creditor; for, as to those posterior in date, there would be no need of providing against any danger of eviction or disturbance from their existence, as they could never be an impediment to the suing creditor's applying the proceeds of the sale of the property first to the satisfaction of his mortgage claim; and the subsequent mortgagees could never complain of the sale, or disturb the purchaser. Be this as it may, it is clear from this article that the purchaser cannot retain any part of the price, except in certain cases, when the property sold is subject to special mortgages other than the seizing creditor's, and that the amount of the price must be paid to the sheriff, without any regard to the general mortgages. Thus the sheriff has a right to require payment of the whole price, unless there be special mortgages; and the question presents itself: What must he do with the balance, after satisfaction of the debt due to the seizing creditor? This question was answered by us in the case of Powell v. Kellar, * * * in which, under what we considered to be a correct application of article 708 of the Code of Practice, we came to the conclusion that the safest course to be pursued was to discharge the subsequent general mortgages to the extent of the funds in the hands of the sheriff, in order to give to the purchaser a clear and unincumbered title. Indeed, it cannot be pretended that the debtor is entitled to receive such surplus, and to keep it for his own use, to the prejudice of his other mortgage creditors, who, perhaps, would find no other property on which their executions could be levied, and who would have no recourse against the property sold to satisfy a debt secured by an anterior mortgage. So we held again, in the case of Fortier v. Slidell, * * * although the features of that case, and the proceedings resorted to, were somewhat different from those of the case first above referred to. The question was not free from difficulties, and we must confess that, in approving, and even adopting, the course pointed out in the cases mentioned, in the absence of any legal provision, we yielded to the suggestions of a strong sense of equity; for it is obvious that, as under article 708, if there remains nothing more due on the price after paying the suing creditor, the sheriff is authorized to give to the purchaser a release of all *the inferior or subsequent mortgages* [italics by the court], justice and equity require that, when there is a balance in his hands proceeding from the sale, such balance should be applied by the sheriff to the satisfaction pro tanto of the said subsequent mortgages according to their dates, unless ascertained to have been previously satisfied, *before giving the release which the purchaser has the right to demand; nay, such release cannot be given, unless it is ascertained that nothing is to be applied to the extinguishment of those subsequent or inferior mortgages* [italics by present writer]."

Citizens' Bank v. Payne & Gilmore, 21 La. Ann. 380, was an action against a sheriff for an alleged misapplication of the proceeds of a sale made by him; the facts disclosed being, substantially, as follows:

Certain lots were sold under executory process to enforce a vendor's lien and mortgage, and realized, say, $1,600, more than was required to pay the debt. The Citizens' Bank held a general mortgage, second in rank, and Joseph Getzinger held a similar mortgage, third in rank. The attorney for the bank, who also represented Getzinger, ruled the sheriff to show cause why he should not pay the balance in his hands to those mortgagees, but concluded that a better course would be to seize the money under fi. fa., and, withdrawing his rule, he obtained a fi. fa. and prepared proceedings in garnishment, which he handed to the sheriff for acceptance of service. The sheriff received the papers and started to write his acceptance, when he was interrupted, and went out, and, as subsequently appeared, paid the balance in question to the defendant in the case—owner of the property which had been sold—

and thereupon the bank proceeded against him (he having afterwards been served as garnishee) to recover the balance in question. In passing upon the case the court said that the sheriff had made himself liable, and, further, as follows, to wit:

"It was held by this court in the case of Delassize v. Cenas, 4 Mart. (N. S.) 509, that an ex parte order of court directing the payment of money does not bind a party entitled to the proceeds of sale of property sold under execution, nor protect the sheriff. A fortiori the sheriff cannot pay out funds subject to conflicting claims on his own authority. Numerous authorities are to the same effect in regard to the distribution of the proceeds of mortgaged property. [Powell v. Kellar] 5 Rob. 272; [Fulton v. Fulton] 7 Rob. 73, and [Fortier v. Slidell, 7 Rob.] 398; [Wright, Williams & Co. v. Trustees of Bank] 7 La. Ann. 123; [Judice v. Kerr] 8 La. Ann. 464; [Byrne, Vance & Co. v. Prather] 14 La. Ann. 654."

In Morris v. Cain, 34 La. Ann. 665, this court, considering the question of the right of a purchaser at a judicial sale to disincumber the property adjudicated to him by distributing the retained portion of the price among the mortgagees entitled to it, said:

"It is only after hearing all concerned in the amount retained by the purchaser, and in the inscriptions securing payment, that the court can pass upon the correctness and dignity of each claim. It is only after such judgment has become final and executory that the purchaser is authorized to pay, and can force the creditor to receive payment, and, in default, can deposit the amount accruing to him, contradictorily with him, in such manner as the court may, under the law, determine. * * * An inscription duly made can be erased only with the creditor's consent, or by a valid decree of court contradictorily obtained. [Leverich v. Prieur] 8 Rob. 97; [Macarty v. Landreaux, 8 Rob.] 130; [Guesnard v. Soulie] 8 La. Ann. 58; [Chige v. Landreaux] 2 La. Ann. 606; [State v. Recorder of Mortgages] 21 La. Ann. 401; [State v. Herron] 29 La. Ann. 848; [Florance v. Mercier] 2 La. 489; [Waters v. Mercier] 4 La. 17; [State v. Le Blanc] 5 La. 329; [French v. Prieur] 6 Rob. 299; [Delavigne v. Gaiennie] 11 Rob. 171."

In Morris v. Cain et al., 35 La. Ann. 759, this court sustained a proceeding whereby the purchaser of property at judicial sale called the mortgagees into court to litigate their rights with respect to the price, the syllabus in the case reading:

"The adjudicatee of property at judicial sale, being entitled to pay but once to receive a clean unincumbered title, when harassed by conflicting claims of mortgage and other rights, may call the various claimants to interplead and settle their claims contradictorily with each other, to the end that he may pay advisedly to secure his exoneration."

In Alford v. Montéjo, 28 La. Ann. 593, it appeared that Montéjo, as a mortgage creditor of Rose, Allen & Co., caused the mortgaged property to be sold by the sheriff in satisfaction of his claim, and that it was adjudicated to him and Generes; that he (Montéjo) retained enough of the proceeds to pay his claim, and, from the balance, paid $2,500 to Hine, who also held a mortgage; and that another (whose name does not appear), holding a judicial mortgage, ruled the purchasers to show cause why they should not pay his claim. It was said by this court:

"But we think the judge a quo correctly sustained the defendants' exception that plaintiff has shown no cause of action, and that, if he has any right in the premises, he must proceed by the hypothecary action against the property, and not by rule against the purchaser. It appears that plaintiff's mortgage is a judicial mortgage, and, if the defendants' mortgage was not superior in rank, the plaintiff's remedy was to claim the proceeds, by third opposition, or, subsequently, by the hypothecary action."

In Godchaux v. Succession of Dicharry, 34 La. Ann. 579, affirming the ruling in the case last above cited, it was held (quoting the syllabus):

"It is only where privileges or prior special mortgages are recorded against an estate that the purchaser can retain in his hands the portion of the price necessary to discharge said prior special mortgage or privilege. "The purchaser in this case had no right, under a prior general mortgage, to retain a portion of the purchase price to satisfy it; his remedy was to claim the proceeds in the sheriff's hands, by third opposition, or subsequently to bring an hypothecary action."

The ruling so made was again affirmed in Pasley v. McConnell et al., 38 La. Ann. 476.

It seems hardly necessary to say that the judgment by confession obtained by Lewis cannot operate to give him a privilege where the law gives none, and thereby to affect

the rights of the plaintiffs with respect to the matters here in controversy. As to the defendant, it appears, as we have stated, that he bought the property in question on December 22, 1911, with the general mortgage in favor of the plaintiffs herein still resting on it, and that the mortgage was canceled on January 5, 1912, at the request of his counsel. This action is said to have been taken by some authority, and, as we understand, the authority is found in the sheriff's deed, from the abstract of which, as copied in the transcript, we make the following excerpt, to wit:

" * * * All subsequent mortgages against this property are hereby authorized to be canceled, by process of law."

Our attention has not been called by defendant's counsel to any other process adopted in this instance than his request and the cancellation by the recorder. Our conclusions are: That Mr. Lewis was entitled to retain, from the $5,900, for which the property in question was adjudicated to him, only the amount required to pay the costs of the suit and so much of the claim sued on as was secured by mortgage and vendor's lien, or, say, $4,942.96, and that he should have paid the balance of the price, say, $957.04, to the sheriff, or have deposited it in court and called upon the plaintiff herein, as the holder of a general mortgage upon the property, to litigate with him their respective claims to such balance.

That Mr. Lewis had no capacity to sit in judgment in his own case, decide that the surplus in his hands should be applied to the payment of his own unsecured claim, rather than to the secured claim of the plaintiffs, and execute his judgment, all without according a hearing to the plaintiffs.

That the sheriff is authorized to cancel mortgages on property sold by him only when the price realized is insufficient to do more than satisfy the senior mortgage under which the sale is made and pay the costs of the suit, and that there is no law which authorizes him, or any one, to cancel, without notice to the mortgagee, a general mortgage, so long as there exists a fund which is applicable, or may be applied, though in controversy, to its payment.

That neither the adjudicatee of the property, nor his vendee, nor the recorder, have any capacity to authorize the cancellation of, or to cancel, a mortgage, under such circumstances, and that such cancellation, made by the recorder, at the request of the counsel for the vendee of the adjudicatee, is not by any process known to the law.

That where, as the result of a sale in satisfaction of a senior mortgage or privilege, there is a surplus of price attributable to the payment of junior general mortgages resting on the property, the holders of such general mortgages may assert their rights either by way of third opposition at the time, or, subsequently, by the hypothecary action.

The decree heretofore entered in this case is, therefore, set aside, and the judgment appealed from is now affirmed.

O'NIELL, J., dissents, being of the opinion that the plaintiff had no right to the hypothecary action under the facts stated in the foregoing opinion.

PROVOSTY, J., dissents for the reasons stated in the judgment of this court heretofore handed down, and also for the additional reasons hereafter to be handed down. See 67 South. 478.