(79 South. 525)

No. 22741.

NEW ORLEANS LAND CO. v. SOUTHERN STATES FAIR–PAN-AMERICAN EXPOSITION CO. et al.

(May 27, 1918. Rehearing Denied June 29, 1918.)

*(Syllabus by the Court.)*

1. VENDOR AND PURCHASER ⊜273—SALES—VENDOR'S LIEN — THIRD OPPOSITION — APPRAISEMENT.

The separate appraisement, contemplated by Civ. Code, art. 3268, where the vendor of immovable property, proceeding to enforce payment of the price, finds his claim to a privilege opposed by that of the "workmen" who have

erected a building on the land, at the instance of the vendee, need not, in all cases, be made before the sale, but may, in some cases, be made afterwards.

2. MECHANICS' LIENS ⟨⟩⟩193 — MECHANICS' PRIVILEGES — CONTRACTOR'S LIEN—EXTENT.

A contractor who has erected a building which was subject to a mortgage and vendor's lien can enforce his privilege only to the extent that, at the time of the sale, under foreclosure of such mortgage, the building enhances the value of the land, and neither the original cost of the building nor its value for the purpose for which it was erected have any necessary bearing upon that question.

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Opposition by James A. Petty to the account of the receiver, claiming privilege on the proceeds of certain property, which was awarded to him by the district court. Judgment reversed, and judgment rendered rejecting the demands of the opponent and dismissing his opposition with the right to remove certain material within a certain time.

W. O. Hart and Charles Louque, both of New Orleans, for appellants. Sanders, Brian & Sanders, of New Orleans, for appellee Petty.

### Statement of the Case.

MONROE, C. J. Plaintiff sold to defendant four contiguous tracts of land aggregating 87 (or perhaps 93) acres, for $131,000, of which $20,000 were paid in cash and the balance was represented by 111 bonds, of $1,000 each, secured by mortgage and vendor's privilege; the act of sale containing the pact de non alienando, and certain stipulations with reference to the appointment of a receiver, the foreclosure of the mortgage, payment of attorney's fees, etc., in the event of the non-payment of the semiannual interest on the bonds; and, that event having occurred, the receiver was appointed, and at his instance the mortgaged property was seized and, after due advertisement, was adjudicated to the plaintiff company for $16,000, which amount, save 10 per cent. paid to the sheriff, for costs,

was retained by the adjudicatee in part satisfaction of its claim, amounting to over $126,000. Thereafter, Jas. A. Petty filed a rule alleging that, under a contract with defendant, he had erected a building on the land in question, including certain extra work, for an agreed price, aggregating $14,752.75, of which $12,021.15 had been paid, leaving due him a balance of $2,731.60; that his contract had been duly recorded; that he had thereby acquired a lien and privilege, first in rank, upon land and building, securing the payment of said price and balance due thereon; and that, under the order of sale, the privileges inscribed against the property had been canceled and the holders referred to the proceeds; wherefore, he prayed that they and the receiver be required to show cause why his claim should not be paid, by preference, from said proceeds in the hands of the receiver. Plaintiff and the receiver answered that the latter would hold the funds, subject to the order of court, but that the rights of the parties could not be adjudicated until the receiver should have filed his account; after which the account was filed, showing that the claim of the vendor and the costs of the proceedings left nothing for the plaintiff in rule or other creditors. Plaintiff in rule then filed an opposition to the account, reasserting the priority of his claim and privilege and praying that the same be recognized and satisfied, in full, and in preference to all others, and:

"In the alternative, in the event the court should hold that he is not entitled to be paid the full amount of his said claim, with interests and costs, by preference and priority over said New Orleans Land Company, out of the proceeds of said sale, then that a separate appraisement be made of the real estate herein sold and of the house thereon, which was erected by opponent, and that opponent be awarded, in said account, the full sum of his said claim, with interest and costs, under the provisions of article 3268 of the Revised Civil Code, * * * with recognition of opponent's first lien and privilege for the full amount of his said claim against the fund of $16,000, the purchase price of said real estate."

The separate appraisement was ordered and made, and the report of the appraisers reads, in part, as follows:

"(1) We find the entire tract of land * * * to be conservatively worth $100,000.

"(2) We are in doubt as to whether the instruction of the court requires us to appraise the one acre of ground on which the building in question was erected, or not; if such be desired, we appraise the same at * * * $1,500.

"(3) With respect to the value of the building erected on the said acre, * * * we find * * * that the contract cost of said building, plus the extras which were duly installed and approved, amounted to $14,752.75, and we are of opinion that the said building, for the purposes for which it was constructed, was worth the said amount, as of date the receivership sale."

The appraisers, called as witnesses, testify that, while they considered the building was worth the cost price, for the purposes for which it was constructed (i. e., as the gateway to the grounds of a projected Pan-American Exposition which barely survived the period of its incubation), it adds nothing to the present value of, but is a detriment to, the land, for ordinary purposes, and as now held by the former owner and adjudicatee.

There was judgment in favor of plaintiff, and against the defendant, for $111,000, with interest, attorneys' fees, and costs, and recognition of the vendor's lien and privilege and special mortgage on the property described in the petition; and in favor of the opponent sustaining his opposition and ordering that the account of the receiver be so amended as to recognize him as a privileged creditor in the sum of $2,056.98, with interest, "to be paid by preference and priority over all other persons whomsoever out of the proceeds of the sale of said real estate, and that the costs of this opposition be taxed against the receiver." Plaintiff and the receiver have appealed, and the opponent has answered praying that the award be increased to the amount claimed in his petition of opposition.

Opinion.

[1] Under the subtitle, "Of the Privilege of the Vendor of Movable Effects," article 3228 of the Civil Code reads:

"But, if he allows the things to be sold, confusedly with a mass of other things belonging to the purchaser" (debtor), "without making his claim, he shall lose the privilege, because it will not be possible in such case to ascertain what price they brought."

We refer to the article thus quoted because it has, at times, been confused with other provisions of the Code which relate to the privilege of the vendor of immovable property, and has, apparently, been considered as bearing upon the effect of the pact de non alienando, and upon the question of the necessity for appraising the improvements placed upon such property before, rather than after the sale, and upon the respective rights of the creditors claiming such improvements, on the one hand, to have the improvements sold, as well as appraised separately from the land, and of those holding mortgages, and vendors' privileges on the land, on the other hand, to have the improvements sold with the land.

The "other provisions" of the Code, to which we have above referred, are to be found in articles 3249, 3268, 3397, and 3407, to wit:

"Art. 3249 (3216). Creditors who have a privilege on immovables are:

"(1) The vendor, on the estate by him sold, for the payment of the price, or so much of it as is unpaid. * * *

"(2) Architects * * * contractors, * * * workmen employed in the constructing, * * * buildings, * * * or making other works.

"(3) Those who have supplied the owner, or other person employed by the owner, his agent or subcontractor, with materials * * * when such materials have been used * * * in such houses or other works.

"The above-named parties shall have a lien * * * upon the building, * * * and upon the lot of ground, not exceeding one acre, upon which the building * * * shall be erected; provided, that such lot of ground belongs to the person having such building erected. * * *"

"Art. 3268 (3235). When the vendor of lands finds himself opposed by workmen seeking pay-

ment for a house or other work erected on the land, a separate appraisement is made of the ground and of the house, the vendor is paid to the amount of the appraisement on the land, and the other to the amount of the appraisement on the building."

"Art. 3397 (3360). The mortgage has the following effects;

"(1) That the debtor cannot sell, engage, or mortgage the same property to other persons, to the prejudice of the mortgage which is already made to another creditor. * * * "

"Art. 3407 (3370). The deteriorations, which proceed from the deed or neglect of the third possessor to the prejudice of the creditors who have a privilege or mortgage, give rise against the former to an action of indemnification; but he can claim for his expenses and improvements only the amount of the increased value which is the result of the improvements made."

The accepted interpretation, placed by this court upon the pact de non alienando and the above-quoted articles, construed together, is that the "pact" (which is, usually, incorporated in acts of sale, with mortgage, of real estate, but for which the law makes no special provision) does nothing more than express, in such contracts, the principle which, by the terms of C. C. art. 3397, is implied in every mortgage; that as a matter of judicial interpretation, its effect, as a contract between the parties, is defined and limited to the conferring of authority to seize the mortgaged property, in a proceeding against the original mortgagor, without notice to any third person who may be in possession; that it does not prevent the alienation of the property or deprive the alienee of any right pertaining to a third possessor, save as to the method of proceeding for the enforcement of the mortgage; and hence that the purchaser of property, subject to a mortgage containing the pact, is a third possessor within the meaning of C. C. art. 3407, and is entitled to claim compensation for his improvements to the extent that they have enhanced the value of the property; that the improvements fall under the mortgage and are subject to seizure and sale; but that equity requires that the third possessor should be indemnified to the extent that he has enhanced the value

of the creditor's security; and that, in determining the amount recoverable, the sole question is the extent to which the improvements have added to the value of the land upon which they have been placed. Bank v. Miller, 44 La. Ann. 199, 10 South. 779.

It will be observed that article 3268 contains no requirement as to the time at which (whether before or after the sale) the separate appraisement shall be made nor as to whether the land and improvements shall be merely appraised separately, or appraised and sold separately; and, as the sole purpose of the article (when construed with the others that have been quoted) is to enable the workmen (or contractors, if we assume that the application of the article can be thus extended beyond its terms) to recover the amount due for improvements placed by them on the land, to the extent that the improvements have enhanced the value of the land, it is not surprising that the jurisprudence on those questions has apparently varied somewhat according to the facts of the cases in which they have been presented.

In Andry v. Guyol, 13 La. 8, it appears that the furnishers of material used in the construction of a building by the vendee of the land intervened, after the sale, claiming the value of the material, as a privileged debt, and that an appraisement was then made of "the relative value of the parcel of ground, with the improvements and the buildings such as they were at the time of the sale"; which claim having been allowed by the trial court, the judgment was affirmed on the appeal. It does not appear to have been suggested that the value of the land was not, at the time of the sale, enhanced to the extent of the value of the material which had been placed on it.

In Diggs v. Green, 15 La. 416, a contractor had obtained judgment against the vendee of a town lot, with recognition of privilege, for labor and material furnished in the construc-

tion of a banquette and gutters, and the property, as thus improved, was afterwards sold, under foreclosure of mortgage, at the instance of the vendor to whom it was adjudicated for much less than the price at which he had sold it. The contractor intervened, after the sale, but did not pray for a separate appraisement, and it was objected that he came too late. It was found that the plaintiff had previously been informed of his claim, and had promised to pay it, and it was said by the court:

"The plaintiff, having bought in his property at a price very inferior to that he had sold it for, after having received a large amount of cash, refuses, with a bad grace, to pay a claim for improvements which greatly enhance its value."

And there was judgment accordingly.

In Cordeville v. Hosmer, 16 La. 590, the contractors obtained judgment, against the purchasers of certain lots, for the price of a building which they had erected thereon, and, having bought in the property at a sale made thereunder, took out a monition for the strengthening of the title so acquired, whereupon plaintiffs instituted an hypothecary action, claiming (by subrogation) a vendor's privilege for an unpaid balance of the price of the lots; and their claim was sustained by this court, speaking through Martin, J., who, after quoting Civ. Code, art. 3235 (now article 3268), held that there should be a separate appraisement of the lots and improvements, in accordance with that article, saying:

"An appraisement and sale are now, for the first time, necessary to the exercise of plaintiffs' rights as mortgagees. They have been guilty of no laches; no opportunity having been afforded them to concur in a proper and legal appraisement," etc.

In McDonough v. Le Roy, 1 Rob. 173, this court held that an injunction obtained by the vendee of the land, prohibiting the sheriff from selling, under a judgment obtained by defendant, and separately from the lot upon which it stood, a building which had been erected by defendant, for the vendee of the lot, should have been sustained, saying:

"The law abhors destruction and waste; the rights of a creditor are increased by the erection of a building on the mortgaged premises; he therefore has a right to prevent an injury to those rights by the sale of the building separately from the lot, as, by such sale, it is probable that the price of the materials only would be obtained. The law therefore guards the rights of the vendor and the builder, by directing the sale of both the objects on which their privileges rest together, in order that the highest price may be obtained."

In Succession of Lenel, 34 La. Ann. 868, it was held that the holder of the builder's privilege, duly recorded, does not lose it by failure to have a separate appraisement of the building and land made before the sale; but that the appraisement may be made after the sale.

In Payne & Joubert v. Buford et al., 106 La. 83, 30 South. 263, it was held that the vendor of sugar machinery lost his privilege for the price by allowing it to be sold, without separate appraisement and "confusedly with a mass of other things," citing C. C. art. 3228.

In Moresi v. Coleman, 115 La. 792, 40 South. 168, plaintiff had intervened in a foreclosure, claiming a privilege on a sugar house and one acre of ground, and had obtained an order for a separate appraisement; but the plantation had thereafter been sold without appraisement, and, at a later period (in the suit then before the court), he attacked the sale, alleging, as one of his grounds, the failure of the sheriff to make the separate appraisement.

Held, that his remedy was to have had the appraisement made after the sale, as it was shown that the seizing creditor offered to join him in so doing.

[2] We conclude, then, that the separate appraisement in this case was timely enough,

though made after the sale. But it was not the appraisement called for by the occasion. The appraisers, acting under a misapprehension, merely ascertained the original cost of the building, and reported that it was worth that amount, for the purpose for which it was erected, which information had no appreciable bearing upon the question at issue, to wit, whether the value of the land, as matters then stood, was enhanced by the presence of the building. Interrogated on that subject, they testified that the presence of the building did not enhance the value of the land, but was detrimental thereto; and no attempt was made either to obtain another appraisement or to show that the material of which the building is composed can be used or removed at a profit to any one.

That material, as we have stated, is in the form of a gateway which leads nowhere, but stands, unwelcome and uncherished, a monument to the memory of an abandoned enterprise; and, so far as we can imagine, can serve no other purpose. Should the opponent be of opinion, however, that the material can be profitably removed, we can see no good reason why he should not be permitted to try that experiment.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, and that there now be judgment rejecting the demands of the opponent and dismissing his opposition.

It is further ordered that the right be accorded to the opponent to remove the material of which the building erected by him is composed, should he think proper so to do; provided that such removal be commenced and completed within 60 days from the date upon which this judgment shall become final, during which delay he is to have ingress and egress upon and from the land whereon said building stands, for the purposes of such removal. It is further ordered that the opponent pay all the costs of this suit.