On Rehearing.
Statement of the Case.
MONROE, C. J.
The undisputed facts of this case, correctly stated in the opinion heretofore handed down, are now restated merely as a matter of convenience in the reading of the opinion which follows, to wit:
On- April 6, 1906, the property now constituting Rosedale plantation was burdened with a first mortgage, by an act importing confession of judgment, and it was thereafter sold, subject to the mortgage, to the Rosedale Planting & Manufacturing Company, to which, under a duly recorded contract, of date May 7, 1910, John H. Murphy furnished the material and labor required “for the reconstructing and repairing of a vacuum pan, with its appurtenances and other machinery,” in the plantation sugar house; the agreed price for the job being $2,110, of which $1,000 were to be paid cash on delivery, and the balance by note maturing on November 1, 1910. Early in 1912, Sundberry (plaintiff and applicant herein) caused executory process to issue to enforce payment, of the mortgage debt of April 6, 1906, and at the sale made by Virtue thereof, on March 25, 1912, became the adjudieatee of the property at a price which fell short of paying said debt, and only a balance of which was attributed thereto. Murphy did not appear in the proceeding, either before the sale or after, and there was no demand for a separate appraisement of the sugar house and acre of ground upon which he now claims a privilege. No effort was made by the adjudieatee, however, to have the inscription of that claim canceled. On April 6, 1912, Sundberry sold the plantation to the Bertie Sugar Company, and in 1914, upon nonpayment of the price, secured by mortgage and vendor’s privilege, again caused executory process to issue by virtue of which the plantation was again seized and advertised for sale; and -thereupon Murphy appeared by intervention and third opposition, and set up a claim for $1,412.12 (represented by the note of the Rosedale Sugar Company, of date January 14, payable December 15, 1911) as the balance due under his contract of May, -1910, alleging, as his cause of action, that-r-
“he furnished to the Rosedale Company, which was, at that time, the owner of the said Rosedale plantation, the material * * * and the skilled workmen and labor for reconstructing and repairing a vacuum pan, with its appurtenances and other machinery, all situated in the sugar factory, on the said * * * plantation;”
That the contract was duly recorded; that he has, under the law, a privilege, outranking all mortgages, on said factory, and on the lot of ground, not exceeding one acre, on which said factory stands, said work done by petitioner “being a part of said factory”; and he prays that the sheriff be ordered to appraise said factory and lot, and sell the same separately from the rest of the plantation, and to retain, of the proceeds, an amount sufficient- to pay his claim, with interests and costs.
To the opposition so filed plaintiff in the seizure pleaded the exception of no cause of action, and answered, alleging the sale in 1912, and distribution of the proceeds; that opponent knew that it was to, and did, take place; that he made no demand for a separate appraisement; and that, if he had any privilege at all, which he (respondent) specially denies, the same should then have been *707 presented. And thereafter the litigants entered into the following agreement, to wit:
“Whereas, John H. Murphy filed a third opposition, * * * and * * * was about to obtain the order which is attached to said petition, and * * * Emil Sundberry would have injoined the execution -of said order, and * * * Murphy and * * * Sundberry, to avoid costs, agreed that said order should not be signed, * * * do agree as follows: The said parties * * * shall litigate said third opposition, neither party taking advantage of the fact that a sale was or was not made under said third opposition; and in the event the said Sundberry is cast, * * * • and the said Murphy is successful, the said Sundberry shall pay to the said Murphy the amount of said judgment, not exceeding the sum of $1,200. It is well understood that said parties shall have, and do reserve, the right of appeal. Done and signed * * * this 16th day of May, 1914.”
The case appears to hafe been submitted and decided in the district court, upon admissions as to the tacts, and practically on the exception, the learned judge of that court saying in his written opinion:
“The contention of defendant, * * * urging that the exception should be sustained, is that plaintiff could not appear in this suit by way of third opposition for the reason that ho had slept on his rights when he allowed the sale of the Rosedale plantation to take place in the suit No. 4,334, entitled Emil Sundberry v. Chauffe Bros.; that his only remedy, if any, was by an hypothecary action. * * * It is true that the third opponent made no appearance in the first sale, and that after that sale his only remedy left to enforce payment of his privilege claim was by an hypothecary action. This is unquestionably the law; but, when this same plantation, or acre of land, is again offered for sale, and by the same seizing creditor, or even anyone else, the said third opponent has certainly the right to come in by way of third opposition to enforce his claim, if it is, as this one, a privilege claim which primes the mortgage of the seizing creditor, and if that privilege claim is recorded in the mortgage records of this parish, and is not prescribed. * * * For the above reasons * * * the exception * * * is overruled. On the * * ’ * merits * * * counsel for Sundberry admitted * * * that he relied solely on this exception; hence offered no opposition to * * * Murphy’s claim,” etc.
In the Court of Appeal, to which the case was taken by Sundberry, his counsel filed a plea of prescription of five years “to the demands contained in the petition of opposition and the note sued on,” but they did not thereafter call it to the attention of the court, either in oral agreement or by brief, and, the judgment of the district court having been affirmed, the Court of Appeal, in refusing a rehearing, cites authority to the effect that it was then too late to urge the plea.
Opinion.
[2] 1. Though a plea of prescription be filed in an appellate court, yet, if the pleader thereafter fails to urge it, or call it to the attention of the court, either by oral argument or by brief, the court may be excused for failing to notice it in the judgment, and cannot be expected to consider it ¡when urged for the first time in an application for rehearing. Baldwin v. Sheriff, 47 La. Ann. 1470, 17 South. 883; Succession of Parham, 51 La. Ann. 989, 25 South. 947, 26 South. 700; Rightor v. Phelps, 1 Rob. 330.
We may remark, however, that the note sued on by the opponent matured on December 15,1911, and that the opposition was filed on April 14, 1914, so that recovery on the note does not appear to have been barred by the prescription of five years.
[1] 2. Plaintiff has not resisted the demand for recognition and enforcement of the privilege in Question on the ground that opponent was never entitled to it, but has throughout, and does now, base such resistance solely upon the failure of the opponent to provoke a separate appraisement of the property upon which the privilege was thought to bear. We shall, therefore, for the purposes of the case, and without expressing any opinion upon the subject, as *709 sume that the privilege once existed, and coniine our attention to the question, was it lost by reason of the failure of opponent to provoke the separate appraisement?
Counsel for opponent express their view of the status and operation of a recorded privilege in the following language:
“When the recordation of the privilege is properly made, and in due time, as is admitted to have been done in the present case, it (the recordation) places the privilege in the rank of a first mortgage upon the property to which it attaches, and, like a recorded mortgage, it follows the property into third, or fourth, or fifth' hands, no matter hoto often the property is sold or resold, and whether by private or execution sale.” (Italics by the counsel.)
The view thus expressed no doubt embodies a correct exposition of those provisions of the law upon which counsel rely, literally interpreted and considered by themselves alone, but it fails to take into account the practical application of those provisions, in particular cases such as this, and their relation to other, and apparently, conflicting, provisions, with which they must be construed.
According to the provisions relied on, a claim secured by privilege, properly recorded, takes precedence of, and is to be paid by preference over, a claim secured by mortgage, which has previously come into existence, is evidenced by an authentic act, importing confession of judgment, and has been previously recorded. Act 45 of 1877, amending and re-enacting C. C. arts. 3274; C. C. arts. 3249, 3399; C. P. arts. 679, 683, 684.
O. C. arts. 3249, reads in part:
“Creditors who have a privilege on immovaables are:
1. * * * The vendor on the estate by him sold, for the payment of the price. * * * 2.* * * Architects, undertakers, * * * master builders, contractors, * * * workmen employed in constructing, rebuilding or repairing houses, buildings, or making other works. 3. * * * Those who have supplied * * * materials * * * for the construction or repair of an edifice or other work, when such materials have been used in the erection or repair of such houses or other works.
“ * * * The above-named parties shall have a lien and privilege, upon the building, improvement or other work erected, and upon the lot of ground not exceeding one acre, upon which the building, improvement or other work shall be erected: Provided, that such lot of ground belongs to the persons having such building, improvement or other work erected; and if such building, improvement or other work is caused to be erected by a lessee of the lot of ground, in that case the privilege shall exist only against the lease and shall not affect the owner.”
According to other provisions of the law, “the debtor cannot sell, engage or mortgage the same property to other persons, to the prejudice of a mortgage which is already made to another creditor.” ,C. C. art. 3397. And the creditors who have either a privilege or mortgage on immovables, may follow the property into whatsoever hands it may pass. G. G. art. 3399.
The person who borrows money with which to buy immovable property, and mortgages the property to secure the loan, is, therefore, by one article of the Code, prohibited from incumbering the property to the prejudice of the mortgage so made, and by another article has it in his power thereafter to so contract with reference to the mortgaged property as to stibject it to a privilege which primes the mortgage; so that, upon the face of the law, there is an apparent conflict in its provisions, which it is the function and duty of the courts to reconcile if possible. Without going exhaustively into the subject, it suffices for the present to say that such reconciliation as has been effected is predicated upon the theory that the “buildings,” etc., for the construction of which the privilege is accorded, are “improvements” which do not prejudice the existing mortgage, but render it more secure by adding value to the property upon which it *711 rests. In the case of a vendor, who has not only a mortgage but a privilege for the price, there is a provision of the Code to the following effect, to wit:
“Art. 3268. * *’ * When the vendor of lands finds himself opposed by workmen seeking payment for a house or other work erected on the land, a separate appraisement is made of the ground and of the house, the vendor is paid to the amount' of the appraisement on the land, and the other to the amount of the appraisement of the building.”
In McDonough v. De Roy, 11 Rob. 174, plaintiff appealed from a judgment—
“Dissolving an injunction which he had obtained to prevent the sale of a house built on a lot of ground on which he had a mortgage as vendor, and which the defendant, who had a privilege thereon for materials furnished, was attempting to sell, separate and apart from the lot on which it had been erected. The parish court was of opinion that, although the plaintiff had a privilege on the building, this privilege was not of as high a class as that of the defendant, the seller of the lumber.”
In deciding the case, Martin, J., said (inter alia):
“The law abhors destruction and waste; the rights of a creditor are increased by the erection of a building on the mortgaged premises; he therefore has a right to prevent an injury to those rights by the sale of the building separately from the lot, as by such sale it is probable that the price of the materials only would be obtained. The law therefore guards the right of the vendor and the builder by directing the sale of both the objects on which their privileges rest together, in order that the highest price may be obtained.”
In saying that the law directs the sale of “both the objects” together, it is, of course, hot meant that the law grants to the holder of a privilege upon a single cabin on a plantation the right to provoke a sale of the entire plantation, upon which he has no privilege or other claim. The mortgagee may, however, provoke a sale of all the property covered by his mortgage, for the law so declares in specific terms. C. P. arts. 734, 744. And the question of the right in such case of a third possessor, found on the property, with title as owner, to claim reimbursement for “improvements” thereto is exhaustively considered in Bank v. Miller, 44 La Ann. 199, 205, 10 South. 779, 781, the opinion in which case reads, in part as follows:
“The apprehension, suggested by counsel, that mortgage creditors may be deprived of their security by ruinous improvements on the part of third possessors has no greater application to the case of mortgages in which the nonalienation pact is expressed than in that of all others in which the law itself writes it; and besides, it has no foundation under a first application of the principle. The improvements, by whomsoever made, fall under the mortgage. If they have not actually enhanced the value of the property, the mortgagee absorbs them without compensation. If they have enhanced the value of the property, why should the mortgagee enrich himself at the expense of the third possessor” (quoting 3 Troplong, Hyp. et Priv. No. 836; 2 Pont, Priv. et Hyp. No. 1205).
Now, it is true that the rights of the third possessor are governed by article 3407 of the Civil Code, which declares that—
“The deteriorations, which proceed from the deed or neglect of the • third possessor to the prejudice of the creditors who have a privilege or a mortgage, give rise against the former to an action of indemnification; hut he emi claim for his expenses mid improvements only to the amount of the increased value which is the result of the improvements made;’’
whereas the rights of the furnisher of material and labor are .governed by other provisions, to which we have referred, and which, when considered alone, apparently confer upon such furnisher a privilege to the full extent of his claim, though it take not only the thing which has been constructed or repaired, but the building in which the thing is contained, and the lot upon which the building stands, for its satisfaction. We have seen that, quoad the vendor of immovable property, the furnisher can recover only in proportion to the appraised value of the thing upon which his privilege rests at the time of the sale, which means not the *713 appraised value if the thing were elsewhere situated, but where it stands, and with reference to the use which may there be made of it. If, however, there be no separate appraisement of the thing (say, a cabin on a plantation), and of the rest of the immovable in which it is incorporated, and the whole is sold, in globo, for a single price, in the enforcement of a mortgage which covers the whole, there is no basis for the ascertainment of the proportion of the single price that should be attributed to the thing upon which, and which alone, the privilege rests.
The lawmaker shows his realization of that difficulty, in the matter of the sale of movables, by C. C. art. 3228, which reads:
“But if he allow the things [movable things] to he sold confusedly with a mass of other things belonging to the purchaser, without making his claim, he shall lose the privilege, because it will not be possible in such ease to ascertain what price they brought.”
For the case of a creditor holding a mortgage on immovable property, but no vendor’s privilege, who “finds himself confronted by workmen seeking payment for a house or other work,” no special statutory provision is made, and this court, finding itself confronted by provisions of law conferring apparently conflicting rights upon such mortgagee and the others mentioned and conceiving it to be its duty to so construe those provisions as to allow the greatest effect to each, while carrying out the purpose of the lawmaker, and according to the parties in interest, so far as possible, the rights to which they would seem to be equitably and severally entitled, has interpreted the provisions in question, taken together, to mean that which the lawmaker, by C. C. arts. 3228 and 326S, has interpreted similar provisions, applicable to different property and different persons, to mean, to wit: That in order to preserve his privilege, in view of a sale under foreclosure of mortgage, of immovable property, which embraces particular property or things which are subject to the privilege, it is incumbent upon the holder thereof to require that the particular property or things, and the rest of the mortgaged property, be separately appraised ; and the same rule has been applied, in cases where, instead of conflict between mortgage and privilege, mortgages have been found in apparent conflict with each other.
In Kohn v. McHatton, 20 La. Ann. 485, it appears that Kohn caused a plantation to be seized under a judgment and advertised for sale; that Hill & Markham intervened, claiming a privilege on the sugar house, machinery, etc., for machinery sold to Holt, a former owner, and for labor furnished, and praying that the property be separately appraised and the sheriff ordered to retain proceeds, but that the separate appraisement was not made; that judgment was rendered by the trial judge in favor of opponents and against Holt, with recognition of the privilege claimed; that on the appeal it was contended that the plantation, sugar house, machinery, etc., having been previously sold, under executory process, to a third person, the privilege had not been preserved by proper registry of the contract from which it was supposed to have sprung. The court, after finding that the contract had not been registered within the time required, said:
“And furthermore it appears that these same opponents made a similar opposition in the ex-ecutory proceedings, * * * in May, 1856, claiming, the same amount and privilege, and obtained an order to have the same sugar house, mills, machinery, etc., appraised separately, to pay their claim, for which they were then asking judgment against their debtor, Holt. But the order was not executed, and they permitted the whole property to be sold * * * confusedly in mass, and it was purchased by McHatton, who paid $13,900 cash into the hands of the sheriff, retaining the balance to pay his own mortgage and other specified creditors of Holt, not including Hill & Markham. This, we think, relieved the property sold of any privilege which may then have existed in favor of Hill & Markham.”
*715 If, then, in a case where the separate appraisement was asked, for, but not made, the sale, without such appraisement, operated a release of the privilege, a fortiori does such sale operate such release where, as in this case, no separate appraisement was even asked; and, if it ceased to exist, the fact that it was allowed to remain uncanceled during the several years that intervened before the second sale does not restore it to life.
In Hoy, Tutor, v. Peterman, 2S La. Ann. 289, it appears that Peterman obtained judgment by confession against one Bowles for labor and material furnished in the construction of a house on a plantation which was owned by Bowles in indivisión with his sister, and that Bowles also confessed judgment in favor of Hoy, who thereafter seized his half interest in the plantation; that Peterman thereupon intervened, asserting his privilege on the house, and praying that the sheriff retain a sufficient amount from the proceeds of the sale to satisfy the same. The court said:
“There is no evidence that Peterman ever recorded his claim as builder and mechanic, and if the judgment, * * * upon being recorded, operated as a privilege on the house, we think it was lost by permitting the house to be sold without a separate appraisement.”
In Succession of Cox, 32 La. Ann. 1035, the court, in giving its reasons for denying tjie privilege there claimed, said:
“The notes in question were issued for lumber long after it was furnished. No evidence of any contract between the furnisher and the owner was previously, at any time, recorded. The notes were registered the day after their date. The buildings and the lot were sold in block, without any separate appraisement, which was necessary for a ‘ventilation’ of the proceeds, in the event of a distribution between mortgage and privilege creditors.”
In Succession of Lenel, 34 La. Ann. 869, there was a contest, in an insolvent succession, between a creditor with special mortgage and another claiming a builder’s privilege, and the court considered at some length the law and jurisprudence with reference to the question of the necessity for a separate appraisement, before, as contradistinguished from after, the sale, in the course of which (having quoted O. O. art. 3268) it said:
“The provision contained in this last article is not a modem provision, originating only with reference to the system of privileges established by the Code, but is merely declaratory of an ancient principle or rule, which we find treated of in Domat (from whom we quote), thus:
“ ‘It often happens that many things having been sold by the lump together, for one sum, without distinguishing the price of each, it becomes necessary afterwards to know the price of each particular, and to regulate how much every one of the things may be worth upon the foot of the price that was given for the whole. And this way of making an estimate is what is called ventilation. Thus, for example, if One of several lands that were sold for one price (un soul prix) happens to be subject to a fine of alienation, it is by ventilation that this fine is regulated. And it would be the same thing if it were necessary to make a particular estimate of a portion of a house or other estate.’ ”
It is to be inferred that in. the case before it the builder had caused no separate appraisement to be made of the building upon which the privilege was claimed either before or after the sale; but the court, apparently conceding that such appraisement, or some equivalent therefor, was necessary, held that its place was supplied by the evidence and that it was unnecessary to remand the case “for the purpose of procuring a formal appraisement by experts.”
The cases of Kohn v. McHatton and Hoy v. Peterman, supra, are referred to as cases in which it appeared that the contracts under which the privileges were claimed had not been recorded; and of the Succession of Oox, it is said that no appraisement was made before or after the sale. Speaking of the three cases, the comment was that wiat was said in them “touching a separate appraise- *717 merit, before the sale [italics by present writer],” could not be regarded as authority upon the question then under consideration (i. e., whether it was competent to have the appraisement made after the sale, or otherwise to ascertain the separate and comparative values of the properties which, respectively, were and were not subject to privilege).
In Citizens’ Bank v. Maureau, 37 Ea. Ann. 857, there was a seizure, under a judgment obtained by the bank, of a plantation, and there were several interventions and third oppositions, among which were those of Bourgeois & Lefort, claiming a privilege on the sugar house for lumber furnished; L’Hote & Go., claiming a privilege on certain cabins and material for the cabins; and Lawrence Keefe, claiming- a privilege on an engine for labor and material in repairing the same; which claims were disposed of by the court as follows:
“2. The privilege claimed by Bourgeois and Lefort should have been rejected, for the reason that the sugar house on which they attach their privilege was not appraised separately. * * *
“3. Similar reasons apply to and dispose of the privilege erroneously allowed L’Hote & Go. Their claim was for a privilege on the cabins and appliances furnished by them to the Greenwood plantation — but those cabins were not separately appraised; hence the court cannot legally ascertain the amount realized from the sale thereof.
“4. We find no error in the allowance made in favor of Lawrence Keefe. The engine which was subject to his privilege was appraised separately.”
In Scannell & Lafaye v. Beauvais, 38 La. Ann. 217, it was held that “two clarifiers and fittings, one copper evaporator and fittings, one skimming tank, in three compartments, two boilers, one steam and mud drum with fittings, one No. 3 Knowles plunger pump and steam pipe for same,” were movables by nature, and could have been removed without removing the sugar house or other machinery; that the opponents had no privilege on the sugar house or lot upon which it stood for their bill for the same; and that they lost their vendor’s privilege by failing to have the articles mentioned appraised separately, and allowing them to be sold confusedly with other machinery and with the sugar house.
In Shakespeare, Smith & Go. v. Ware, 38 La. Ann. 571, the things alleged to have been furnished, and on account of which a privilege was claimed on the sugar house and acre of land, are described in the opinion as “an apparatus to boil the cane juice, to granulate the latter, and to dry the sugar by the process of centrifugals, and to furnish all the pumps, the tanks, and other appliances necessary thereto,” and it was held that the opponents were not entitled to the privilege claimed, without prejudice, however, to their right to assert the privilege to which they might be entitled.
In Reusch & Co. v. Keenan & Slawson, 42 La. Ann. 419, 7 South. 589, it was held (quoting from the syllabus) that—
“The failure of the owner of a note secured by vendor’s privilege on certain lots to aver and enforce it expressly amounts to a waiver of the same in an action brought by him on the same note, secured by a different act on the same and other lots, where he alleges only the second act, and has all the lots sold in globo.In such a case it is impossible to discriminate what portion of the proceeds of sale could accrue to the note secured by vendor’s privilege on part of the lots.”
In Payne & Joubert v. Buford, 106 La. 87, 30 South. 263, it was held that the vendor of sugar house machinery had no privilege on the sugar house and lot, and the vendor’s privilege was lost by allowing the machinery to be sold without separate appraisement.
In Swoop v. St. Martin, 110 La. 237, 34 South. 426, plaintiff claimed a vendor’s privilege on certain articles which the court found to be new pieces and parts of machinery, which, added to that in defendant’s sugar house, became incorporated in the mill, and thereby merged in the realty, losing their *719 identity as movables, and no longer subject to the vendor’s privilege on movables.
In Hibernia Bank v. Knoll, etc., Co., 133 La. 697, 63 South. 288, it was held that bag= asse and syrup conveyors, in their places, and a piece or section used for the repair of a smokestack, become part of the sugar house to which the vendor’s privilege for the price of those articles does not extend.
In re Receivership of Augusta Sugar Co., 134 La. 977, 64 South. 871, the claim of in-i tervenors in the receivership proceeding to “vendor’s privilege upon a vacuum pan, a vacuum pump, a water pump, a tower tank, an oil storing tank, and three magma tanks, sold by them to the now insolvent company, and erected by them on its plantation,” was sustained, it being held (Breaux, C. J., and Monroe, J., dissenting) that the articles mentioned retained their character as movables.
In Pratt & Co. v. Cecilia Co., 135 La. 179, 65 South. 100, plaintiff’s claim to a vendor’s privilege on a “Corliss engine and cane crusher and appurtenances (-with the exception of the housing caps and hydraulic pipes),” sold to defendant and erected on its plantation, was sustained (Monroe, J., dissenting).
In Robinson v. Cosner, 136 La. 611, 67 South. 474 (here cited by both litigants), it was said of a claim for the price (merged in a judgment) of a pump sold and erected for the irrigation of land thereafter sold under execution:
“The claim upon the Layne & Bowler notes, if properly recognized in the judgment and recorded, would have borne a privilege, which could be successfully asserted against a third person, upon the pump and machinery and one acre of the land upon which they were situated; but the judgment contains no specification of the property to be affected, and was not recorded until after the registry of plaintiffs’ judgment. * * * Again, conceding that, under article 246 of the Constitution, the parties who furnished the pump and machinery wore otherwise entitled to a privilege to the extent above stated, and that Lewis was subrogated to their rights, the privilege was lost by reason of his failure to have the property to which it was subject separately appraised and sold.”
If it be said that the reason first above assigned was sufficient, and hence that that last assigned was obiter dictum, we think the answer is that the court by which a judgment is rendered is vested with authority to determine whether it will assign one reason therefor or more, and if, two reasons being assigned, both are pertinent, no one is authorized thereafter to determine, as to one more than the other, that it did not enter into the judgment, but was a “loose saying” — words spoken by the bye, or on the spur of the moment.
In Re Connell Iron Works Co., 138 La. 702, 70 South. 617, there were several oppositions to the account of the receiver, and among them those of Otto Mayer and Charles Karst, mortgage creditors, whose claims for attorneys’ fees, as stipulated in their acts of mortgage, having been denied by the receiver, were allowed by the judgment of the trial court. It was said by this court:
“We think the fees were properly allowed as a debt. * * * But the lots of ground upon which the mortgages * * * bore were sold confusedly, in globo, with the other immovable property of the receivership, without previous appraisement, and it is now impossible to identify the proceeds of -the sale of the particular lots, * * * or, in other words, to be certain what amount was realized from the sale of the mortgaged property; and the consequence oí this confusion is that no particular part of the proceeds can be attributed to the mortgages; or, in other words, that the mortgages are lost. This principle hah so often operated to extinguish privileges that citation of cases on that point can hardly be necessary. It applies equally in the case of mortgages.”
In New Orleans L. Co. v. Southern States, etc., Co., 143 La. 884, 79 South. 525, it was held that a separate appraisement, shown to have been made after the sale, but before the distribution of the proceeds, was timely enough, but was not the appraisement required. In conclusion we may observe that *721 it would, so far as we can judge, be impossible, at this time, for any one, including the adjudicatee himself, to say what proportion of the price bid at the sale of March 25,1912, was attributable to the things for the furnishing of which the opponent now before the court claims a privilege; that the law regulating mortgages and privileges, as understood and interpreted by this court, confers upon the holder of a mortgage covering the whole of particularly described property the right to cause the whole of such property to be sold, provided it brings enough to satisfy the mortgages and privileges which take precedence of his and to retain in his hands the amount required to satisfy them; that, with | respect to such mortgages as are coextensive with that under which the sale is provoked, ' the’ holders are, and remain, protected by the registry of the same until they are satisfied; but that (confining our ruling to the case now before the court), with respect to such privileges as bear only upon part of the property covered by the mortgage under which the sale is provoked, it is incumbent upon the holder to have such part separately appraised, as it is necessary at that time, and before the distribution of the proceeds arising from the sale, to determine what proportion of those proceeds should be attributed to such privileges; and that it does meet that necessity for the holders thereof to ignore the opportunity thus afforded them, and assert their rights against the property or the proceeds thereof, upon the occasion of a subsequent sale — the privileges are lost. In the case of Robinson v. Cosner, supra, as decided on the rehearing (136 La. 605, 67 South. 468), the judicial mortgage in favor of the plaintiffs, which was held to affect the property until satisfied, covered the entire property which was the subject of the litigation; there was therefore no occasion for a separate appraisement in order to determine the rights of the mortgagee, and there was a surplus of the proceeds of the sale, beyond the amount required to satisfy the claims of the seizing creditor, in so far as that claim primed the mortgage of the plaintiff. That surplus should have been applied in satisfaction of plaintiffs’ mortgage, but was not so applied, and yet the sheriff, who had received no part of the proceeds (save in payment of the costs of the proceedings), assumed to cancel the mortgage, and plaintiffs got nothing. It was held that they were entitled to recover by means of the hypothecary action, as though their mortgage had not been canceled.
For the reasons thus assigned it is ordered and adjudged that the judgment heretofore handed down herein, as also the judgment of the Court of Appeal, here made the subject of review, and the judgment of the district court, affirmed by the Court of Appeal, be set aside, and that there now be judgment in favor of the plaintiff in the seizure, and against the intervener and opponent, rejecting the demands of the latter, and dismissing his intervention and opposition, at his cost.
PRO YO STY, J., dissents for the reasons assigned in the original opinion handed down.