(126 So. 69)

No. 29743.

**GLASS v. IVES et al. (three cases).**

June 17, 1929.

On Rehearing, Jan. 6, 1930.

Lee & Williams, of Mansfield, for appellants.

Craig, Bolin & Magee, of Mansfield, for appellees.

### On Rehearing.

O'NIELL, C. J. This case consists of three hypothecary actions, which were consolidated and tried together. They are founded upon three recorded judgments against A. A. Hammond, deceased, held by the plaintiffs, respectively, the one in favor of George L. Glass being for $2,000, the one in favor of W. P. Glass being for $3,200, and the one in favor of T. G. Glass being for $3,900. The judgments bear interest at 8 per cent., the one in favor of George L. Glass from October 30, 1920, and the two others from January 1, 1921; and they all bear 10 per cent. attorneys' fees. The total amount of the three judgments is now, on the date of this decree, according to our calculation, $17,355.52, which is nearly three times the value of the property sold by Hammond to the defendant R. A. Ives out of which the plaintiffs seek to satisfy their judgments. The judgments were recorded in

Sabine parish in December, 1921; at which time Hammond owned a lot with a small bank building on it, in the town of Pleasant Hill, in that parish. The property had been abandoned as a bank building, and was not large enough or otherwise suited for any other business. Hammond died in 1924, leaving a widow and several heirs. R. A. Ives, who is the principal defendant in these suits, was then in possession of the property as owner. He could not produce a title deed, on the trial of these cases, but it seems to be conceded that he bought the property from Hammond, and it is conceded that the property is subject to the judicial mortgages in favor of the plaintiffs. These hypothecary actions were brought against the widow and heirs of the deceased Hammond and against Ives to have the judicial mortgages recognized and enforced, and to compel him either to pay the plaintiffs' judgments or to surrender the property to the sheriff, to be sold to satisfy the judgments. The widow and heirs of Hammond made no defense to the suit, and a judgment by default was entered against them. Ives set up a claim for $4,087 for improvements which he had made to the property. After trial of the case the court allowed Ives for the improvements $3,812, to be paid out of the proceeds of the sale of the property in preference to the judgments held by the plaintiffs. Judgment was rendered accordingly, in each of the three cases, recognizing the judicial mortgage of the plaintiff for the amount of his judgment, ordering Ives to surrender the property to the sheriff, to be sold at public auction, and ordering the claim of Ives for $3,812 paid out of the proceeds of the sale, and ordering the balance of the proceeds, if there should be any, to be applied to the payment of the plaintiff's judgment. The plaintiff in each case has appealed; and Ives, answering the appeal in each case, asks that the judgment be amended so as to allow him to retain possession of the property until his claim of $3,812 is paid.

It is not disputed that Ives enlarged and remodeled the bank building so as to increase greatly its rental value. The list of expenditures which he filed in evidence amounted to $4,086.50; but there are some items which, according to the testimony, must be deducted. He claims $250 as the amount paid on a contract let to one James Gibbs, to remove the bank vault and a chimney, to close two openings, and to fill a well; but the evidence shows that the cost of this work was only $75, less $45 received for the old brick which formed the vault. The item of $250, therefore, is subject to a reduction of $220. There are several items amounting to $705.50, charged on the account for replacing the roof destroyed by fire, and repairing walls damaged by the fire, which occurred after Ives had enlarged and remodeled the building. He had the building insured, and collected $700 insurance, and, with that sum plus $5.50, merely replaced the improvements which he had already made, and for which he has credit for $2,200 on the account which he rendered. He is not entitled to be credited twice for these improvements, merely because they were partially destroyed by fire, especially as he was insured against such loss. He has taken credit also for $101 for insurance premiums which he paid, and for $100 for his time and attention given to the matter of the fire loss. These items must be deducted, and in fact we understand that they were deducted in the judgment rendered by the district court. The total amount of the deductions is $1,126.50; hence the reimbursement due to Ives is $2,960.

The evidence shows that the property is worth now only about $6,000, and that it is virtually impossible for the proceeds of the sale, to be made by the sheriff, to amount

to enough to pay the plaintiffs' judgments, amounting to $17,355.52 now, and Ives' claim of $2,960. The question is: Who shall suffer the loss? Or, shall it be apportioned, and, if so, how? It is not disputed that the expenditures made by Ives enhanced the value of the property at least to the full amount of the expenditures, and he concedes that he is not entitled to more than he spent in the improvement of the property. The evidence shows that, according to the rental value, the property was worth only about $1,500 before Ives converted it from a bank building into a building suitable for other commercial purposes.

On the original hearing of this case we were of the opinion that, if, as was quite certain, the proceeds of the sheriff's sale should be not sufficient to satisfy the claims of the plaintiffs and the claim of Ives, he should receive a sum bearing the same proportion to the total proceeds that the cost of his improvements bore to the total value of the property, and that the plaintiffs should receive the balance of the proceeds, to be credited on their judgments. We were of the opinion that the ruling in Taylor v. Marshall, 43 La. Ann. 1060, 10 So. 368, was authority for making such an apportionment of the proceeds of the sale in a case like this, but we find that it is not so; for, in the case cited, the parties conceded that such an apportionment of the proceeds of the sale should be made, and the only question at issue was what proportion the cost and extent of the improvements bore to the total value of the property.

The attorneys for Ives contend that he is entitled to be paid first, and in preference to the plaintiffs, the amount spent by him in improving the property; and in support thereof they cite Gravier v. Baron, 4 La. 242; Citizens' Bank v. Miller, 44 La. Ann. 199, 10 So. 779; and New Orleans Land Co. v. Southern States Fair-Pan-American Exposition Co., 143 La. 884, 79 So. 525. These decisions do not sustain the proposition that a third possessor, being evicted by the holder of a mortgage recorded previous to the possessor's acquisition of the property, is entitled to be reimbursed for improvements made by him on the property, to the prejudice of, or in preference to, the holder of the mortgage. In Gravier v. Baron, the court, without deciding anything in that respect, merely stated that, if the third possessor had not waived his claim, he would have been entitled to compensation for the improvements which he made on the property. In Citizens' Bank v. Miller, the only question before the court, in that respect, was whether a third possessor, being evicted by the holder of a mortgage containing the pact de non alienando, was entitled to compensation for the improvements which he had made to the property, or stood in the shoes of the original mortgagor by reason of the pact de non alienando. The court decided that the third possessor was entitled to compensation for the improvements which he had made to the property, notwithstanding the pact de non alienando in the act of mortgage; and, in so deciding, the court cited Troplong, vol. 3, Hyp. et Priv., No. 836, to the effect that equity required that the third possessor should be indemnified for having improved the property, on the principle that the creditors who dispossessed him should not be permitted to enrich themselves at his expense. In New Orleans Land Co. v. Southern States Fair-Pan-American Exposition Co., the claim for improvements made to the property was asserted, not by a third possessor, but by a builder, claiming a builder's lien, under article 3249 of the Civil Code, and the right to a separate appraisement of the building, under article 3268. In deciding the case, the court quoted substantially the decision rendered in Citizens' Bank v. Miller,

but the court rejected the lien claimed by the builder, because the thing which he had constructed, consisting of a gateway to the land, had not enhanced the value of the property.

We are not aware of any decision of this court to the effect that, where the property is worth less·than the total amount of the mortgages on it, plus the reimbursement due to the third possessor for improvements made by him, the latter is entitled to be paid for his improvements in preference to the holders of the mortgages, out of the proceeds of a sale of the property provoked by a mortgagee. The rights and obligations of the third possessor, in that respect, are pronounced in article 3407 of the Civil Code, viz.:

"The deteriorations, which proceed from the deed or neglect of the third possessor to the prejudice of the creditors who have a privilege or a mortgage, give rise against the former to an action of indemnification; but he can claim for his expenses and improvements only to the amount of the increased value which· is the result of the improvements made."

That article was numbered 3370 in the Code of 1825 and was not changed at all in the revision of 1870. The French text of article 3370 of the Code of 1825 was taken verbatim from article 2175 of the Code Civil. The interpretation of article 2175 of the French Code by the Court of Cassation, and by the French commentators, ought to be accepted, therefore, as the correct interpretation of article 3407 of the Louisiana Code, in the absence of any expression to the contrary by this court. In Cass. req. 24 novembre, 1868, D. 71, 5, 214, reported in Journal du Palais, 1869, p. 423, the Court of Cassation gave an interpretation, which, translated, is: "When the price of adjudication of the immovable

relinquished to a mortgagee by a third possessor does not equal the two combined sums of the appraisement which was made previously of the original value of the immovable and of the enhanced value resulting from the improvements of the third possessor, it is upon the enhanced value only and not upon the original value that·the deficiency must be borne, if it is otherwise certain that this last value has not varied; the third possessor has no right, in such case, to maintain that the deficiency must be distributed proportionately upon the value of the immovable so that the hypothecary creditors should bear it in part." Fusier-Herman, Code Civil, art. 2175, No. 20, says precisely the same thing. Baudry-Lacantinerie, V. 27, No. 2206, states the proposition, substantially, thus: "If the price of the adjudication does not amount to the value of the immovable plus the increased value, the mortgage creditors have the exclusive right to that part of the price corresponding to the value of the immovable less the amount of the improvements. The third possessor has only a right with respect to the surplus and bears alone the loss resulting from the insufficient adjudication." Dalloz, Code Civil, art. 2175, No. 126, declares: "According to the most general opinion, the third possessor does not have the advantage of a privilege on the price of the adjudication of the immovable because of the increased value resulting from his expenditures, because no text accords him that privilege." Aubry & Rau, like Baudry-Lacantinerie, say: "When the price of the adjudication does not represent the combined value of the immovable and the increased value resulting from the expenditures made by the third possessor, mortgage creditors have the exclusive right of preference to that part of the price which represents the value of the immovable less the amount of all expenditures. The third possessor may claim

his expenditures only with respect to the surplus, and consequently he alone bears the loss caused by an insufficient adjudication." Huc, V. 14, No. 45, says: "There is also a new difficulty presented in the case where the adjudication is made for a price less than the value of the immovable and the enhanced value. It is questioned by whom will the loss resulting from this difference be borne? The Court of Cassation has decided that the loss would be borne solely by the third possessor."

The meaning of the decision rendered by the Court of Cassation and of the opinions expressed by the French commentators is that the third possessor should not be permitted to interfere, by spending money for improving the property, with the right of the mortgage creditor to collect to the extent of the value which the property would have if no such improvements had been made. In this case, the evidence shows, beyond all doubt, that the property was worth only $1,500 before Ives improved it. He spent $2,960 for the improvements, and they enhanced the value of the property to that extent at least. The original value, $1,500, plus the cost of the improvements, $2,960, would make only a value of $4,460. The testimony shows that the property is worth about $6,000; but it would not be fair, or in accord with the opinions of the French authorities whom we have cited, to allow the plaintiffs to take first out of the proceeds of the sale to be made by the sheriff the difference between the cost of the improvements, $2,960, and the present value of the property,—that is to say, $3,060—and to allow Ives only the remainder, if there should be any, of the proceeds of the sale, to the extent of his claim of $2,960. That would be unfair in this case particularly, because, according to the testimony, the increase in the value of the property, from $1,500 to $6,000, was due more to

Ives' enlarging the old bank building, and remodeling it into a building suitable for any commercial establishment, than to a rise in values generally in the community. Our opinion is that the net proceeds of the sale to be made by the sheriff, after deducting the court costs, should be applied first to the payment of the plaintiffs' judgments, pro rata, to the extent only of $1,500; the remainder of the proceeds, if there be any, should be applied to the reimbursement due to Ives, to the extent of $2,960 if the remainder amounts to that much; and, if it amounts to more than that, the surplus should be applied, pro rata, to the payment of the balances still due on the plaintiffs' judgments; and if, by any chance, the proceeds of the sale should amount to more than enough to pay the plaintiffs' judgments in full and to reimburse Ives his $2,960, the surplus should go to Ives as owner of the property.

■ Ives' answer to the appeal, in which he asks to be allowed to retain possession of the property until he is reimbursed the cost of his improvements, is founded upon articles 508 and 3453 of the Civil Code, pertaining to the rights of a possessor in good faith, when evicted by the true owner of the property. These articles are not applicable to a case where the possessor is evicted by the holder of a mortgage recorded previous to the possessor's acquiring title to the property. It was so decided in Citizens' Bank v. Miller, 44 La. Ann. 208, 10 So. 779. Besides, our conclusion that the plaintiffs are entitled to be paid first, out of the proceeds of the sale to be made of the property, to the extent of the value which the property had before it was improved by Ives, does away with his demand to remain in possession until he is reimbursed for the improvements he made.

The judgment heretofore rendered by this court having been set aside by the granting

of a rehearing, the judgment appealed from is now amended so that the proceeds of the sale to be made by the sheriff shall be applied first, and to the extent only of $1,500, to the payment, pro rata, of the plaintiffs' judgments; and so that the remainder of the proceeds, if there be any, shall be applied to the reimbursement due to R. A. Ives, to the extent only of $2,960; and so that the balance of the proceeds yet remaining, if there should be any, shall be applied, pro rata, to the payment of the balances then remaining due on the plaintiffs' judgments; and so that, if the net proceeds of the sale to be made, after deducting the court costs, should amount to more than the total sums due to the plaintiffs, with accrued interest and attorneys' fee, and the $2,960 due to Ives, the surplus also shall be paid to him, as owner of the property. In all other respects the judgment appealed from is affirmed; the appellee, Ives, is to pay the costs of this appeal. The right to apply for another rehearing, within the time allowed, is reserved to all parties.