HILLARY J. CRAIN, Judge Pro Tem.
12This case involves the respective rights of a mortgage holder on an immovable and those of a third party possessor and owner of the property when it has been seized by the sheriff preparatory to its sale under a writ of fien facias.
The facts of this litigation are as follows. Charles Hogan, plaintiff, sold the house and lot at issue here to John Turnipseed and his wife Juana, and held a mortgage on the property. When the Turnipseeds failed to make the required payments, Hogan sued them on the note. A judgment in his favor was rendered on August 27, 2003, in the amount of $64,433.35, with interest at 8.75% from September 1, 2001, until January 1, 2014, and with legal interest thereafter, plus 25% of the principal and interest as attorney fees. Sometime in the fall of 2009, Hogan began proceedings to have the property seized and sold at public auction. The total amount owed at that time was alleged to be almost $130,000. There is no explanation of record as to why there was a six year gap in these proceedings.
During these six years several other events affecting the property occurred. In 2004, the Parish of St. John the Baptist sued the Turnipseeds alleging that the | ¡¡house on the property was in such disrepair that it should be demolished. A judgment ordering demolition was entered on July 7, 2004. On that same date, by an authentic act of cash sale, the Turnipseeds sold the property to the Broussard-Balo-ney Law Firm, APC, for $10,000. The law firm rebuilt the building and was using it commercially when Hogan commenced proceedings to have the property seized and sold.
The law firm intervened in this proceeding seeking to enjoin the sale under the provisions of La. C.C.P. Art. 2703. That article sets forth the rights of third party possessors who have not assumed payment of any debt secured by a mortgage on property to be seized and sold at a sheriffs sale. A hearing on the intervention was held on January 29, 2010, and a judgment was signed on May 6, 2010. In that judgment, the district judge found that the house no longer existed, and that the mortgage on that portion of the property was extinguished. She held that Hogan still had a valid mortgage on the lot, and determined that the lot had a value at the time of the hearing of $22,500. She further found that the 25% attorney fees specified in Hogan’s note from the Turnipseeds was excessive and that a proper amount was $5,500. She also found that the new building was valued at $186,000, and that 5% of the materials from the original house had been used in its construction, and at this rate had a value of $9,300. Finally, she determined that interest on Hogan’s mortgage should be at the legal rate commencing in 2003, but not to exceed 8.75%. The judgment ordered the law firm to pay these amounts to Hogan, or alternatively the sheriffs sale would not be enjoined. Both parties now appeal.
Broussard-Baloney Law Firm, APC asserts that the judgment is in error as to the amount of Hogan’s judgment which is secured by the mortgage on the lot, and that the firm is being improperly cast in *345 judgment for the enhancement of the value 14of the property occasioned by its own endeavors. Hogan argues to the contrary that the judgment in effect improperly reduces the final judgment which he obtained when he sued the Turnipseeds on the note. He also urges that the law firm did not establish that it owns the property.
As to ownership of the property, the law firm introduced an authentic act of cash sale establishing that it purchased the property in 2004. Hogan, for his part, introduced a list of assets filed in a bankruptcy proceeding in 2008 by Mrs. Turnip-seed listing the property as being owned by her. This latter document is not competent evidence to challenge the authentic act, and we therefore reject this argument.
We do determine, however, that the trial judge did not correctly apply the rights applicable to third party possessors of mortgaged property when the mortgagee forecloses on that property. Those rights and remedies are provided for in La. C.C.P. Art. 2703 as follows:
Rights of third possessor
When property sold or otherwise alienated by the original debtor or his legal successor has been seized and is about to be sold under executory process, a person who has acquired the property subject to the mortgage or privilege thereon and who has not assumed the payment of the indebtedness secured thereby may:
(1) Pay the balance due on the indebtedness, in principal, interest, attorney’s fees, and costs;
(2) Arrest the seizure and sale on any of the grounds mentioned in Article 2751, or on the ground that the mortgage or privilege was not recorded, or that the inscription of the recordation thereof had preempted; or,
(3) Intervene in the executory proceeding to assert any claim which he has to the enhanced value of the property due to improvements placed on the property by him, or by any prior third possessor through whom he claims ownership of the property. This intervention shall be a summary proceeding initiated by a petition complying with Article 891.
1 ¡¡The law firm did not opt to pay the mortgage as per Art. 2703(1), and that provision is thus inapplicable to this case.
A seizure and sale may also be enjoined under Art. 2703(2) for the reasons specifically listed there, as well as on the grounds mentioned in La. C.C.P. Art. 2751. That latter article provides for enjoining the sale because of extinguishment, but it is for extinguishment of the debt supporting the mortgage, not the extin-guishment of the mortgaged property itself. Intervenors cite La. C.C. Art. 3319(1) as grounds for a third party possessor to enjoin a sale because of partial extinguishment of the mortgage on the property, citing Coen v. Gobert, 154 So.2d 443 (La.App. 2nd Cir.1963) as support for that proposition. However, Art. 2703(2) refers only to Art. 2751 and that article makes no reference to anything but extin-guishment of the debt. Additionally, Coen involves an attempt to enforce a mortgage on a piece of property not subject to the mortgage to which a building had been moved from the mortgaged property. The court held that the mortgagee renounced the mortgage on the building by agreeing for it to be moved. Here, even though the building on the mortgaged property was substantially replaced by another building also on the mortgaged property, we find no authority for the proposition that the mortgage was partially extinguished. Rather this case falls under the general rule that improvements placed on the mortgaged property are subject to the *346 mortgage on the property. Federal Land Bank v. Cook, 155 So. 249, 179 La. 857 (La.1934).[1]
LWe conclude that the third party possessor herein must assert its rights under La. C.C.P., Art. 2703(3), which is for the enhanced value of the property due to the improvement placed thereon. We further conclude that Glass v. Ives, 126 So. 69, 169 La. 809 (La.1929) furnishes guidance for applying that article. In Glass, the court determined that Ives had purchased the property from Hammond subject to judgments against Hammond. Ives reconfigured an old bank building into one that could be rented to several tenants, thus enhancing the value of the property. The court held that the property should proceed to sheriffs sale; that from the proceeds of the sale the judgment creditors should receive first the value of the property prior to the improvements; that from the remaining proceeds the third party possessor Ives should receive the enhanced value of the property not to exceed the amount actually expended for improvements; that if there were remaining funds they would go to the judgment creditors to satisfy the judgments plus interest and attorney fees; and in the event that there were still funds available, these would go to Ives as the owner of the property. This procedure is now set forth in La. C.C. Art. 3318.
The court in Glass also made the determinations of value from evidence presented at the trial prior to the sheriffs sale. We have evidence of values presented at the hearing in this case from which we can determine the amounts due the parties should the matter proceed to sheriffs sale.
Evidence presented showed that the house located on the property when it was mortgaged had subsequently been abandoned for a number of years. Beverly Milliotto, supervisor of the parish Code Enforcement and Inspection office, testified at length about numerous inspections that officers from her department had conducted at the building beginning in 2003, and their attempts to have code violations corrected. When none of their efforts produced results, the Parish took |7legal action. She described the condition of the building at the time the demolition order was sought as follows: the yard was grown up in weeds, the front and rear porches were falling off, the windows were broken out, there was extensive rot throughout the building, and it was open to the elements.
Carl Baloney, a member of the Brous-sard-Baloney firm, also testified about the condition of the property at the time of the purchase. He noted that his law office is next door to the property. He described the weeds as being ten feet tall with debris throughout. The building had been invaded by rats. Pigeons, which came in through holes in the roof and windows, were nesting throughout. The roof had collapsed in places. The plumbing was completely gone and the electrical system was exposed. The porches were rotted *347 out, as were most of the first and second story floors. The studs and sills were also rotten and the building was starting to lean. There was also evidence of vagrants using the building, setting fires in it, and using it to store contraband.
He described the process by which he had constructed the new building on the mortgaged property. He said that 99% of the wood used in this process was new, while the remaining 1% consisted of a few pieces of cypress that came from the original structure. His basic description of this work was that the sills, joist, studs, floors, roof timbers, and roofing were replaced as the work progressed. All of the windows were replaced, and the plumbing and electrical systems were all new work, as was all of the interior dry wall. He testified that the firm spent approximately $75,000 to reconstruct the building.
Under the Glass v. Ives, supra, analysis we must determine the value of the property at the time the law firm acquired it and began the improvements. The testimony bearing on this point was provided by Jimmy Thorn, Jr., an expert appraiser. His analysis was that in 2004, when the parish obtained the demolition 1 Rorder, the then residential lot was worth $10,500. He further noted, however, that because of that order, the demolition costs would have been $7,500, leaving a net value of $3,000. At the time of the hearing, he was of the further opinion that because the law firm had converted the lot to commercial use, its value had increased to $22,500. The new building he appraised for $186,000. Based on this testimony, we find the value prior to the improvements to be $10,500. Although the appraiser also deducted $7,500 as the costs of demolition, we note that according to the testimony of Carl Baloney the demolition occurred simultaneously with the rebuilding of the structure, and thus there was no additional expenditure to tear down the old structure. We also determine that the cost of improvements made was $75,000 as testified to by Carl Baloney. The value of Hogan’s judicial mortgage is as expressed in the judgment of August 27, 2003, which judgment was duly recorded.
For the foregoing reasons, we amend the judgment to provide that when the property is sold, Hogan is entitled to an initial payment of $10,500 from the proceeds. The Baloney-Broussard Law Firm, APC, is entitled to the next $75,000. If there are still funds available Hogan is to be paid the amounts owing on the mortgage. Any funds remaining after these payments shall go to the law firm as owner of the property.
For the foregoing reasons the judgment of the district court is reversed as to enjoining the sheriffs sale because of partial extinguishment of the mortgaged property, it is amended as to the sums due the parties after the sheriffs sale, and as amended, affirmed, and is remanded to the district court for further proceedings consistent with this opinion.

REVERSED IN PART, AMENDED AND AS AMENDED, AFFIRMED AND REMANDED.

. This case held that a building erected on a mortgaged tract of land becomes subject to the mortgage. The court relied on prior La. C.C. Art. 464 (1870), and prior Art. 3310 (1870) in reaching its decision. The former article provided that "lands and buildings or other constructions, whether they have their foundations in the soil or not, are immovable by nature,” and the latter stated that "the conventional mortgage, when once established on an immovable, includes all the im-proveniente which it may afterward receive.” Article 464 was amended and renumbered as Art. 462 in 1979 and now provides that "tracts of land, with their component parts, are immovables.” Article 3310 has been eliminated. The Revision Comment-1991 to La. C.C. Ait. 3286 explains that Art. 3310 was "omitted as being unnecessary and incomplete, since the effect is not limited to conventional mortgages, but arises from the nature of the classifications of the property itself."